Chief Justice Kobertson
delivered the Opinion of the Court.
Upon the trial of an indictment against Olive T. Major, for keeping a tippling house, the Circuit Court refused to instruct the jury that, if they should believe from the evidence that an old negro man slave, the property of Major, had, with his master’s knowledge and permission, and in a house on his land, kept a tippling house, Major himself was, in judgment, of law, thereby guilty of keeping a tippling house.. And the jury having thereupon returned a verdict of not guilty, upon which ,<th§ Court rendered a judgment of acquital, the only question presented for revision is that involved in the instruction which was overruled by the Court.
As the testimony on the trial, tended to prove all the facts hypothetically assumed in the instruction, it is the opinion of this Court that the Circuit Judge erred in overruling it.
As one person may, by merely using the agency or instrumentality of another person, be guilty of keeping a tippling house — there could, we presume, be no doubt that a master, who had furnished his own slave with a house, and with spiritous liquors to be retailed therein, without license, and for the ipaster’s own benefit, might be legally convicted for having kept a tippling house, in violation of the law — for, so far as the principal’s liability-may be concerned, it cannot be material whether his agent had been bond or free, minor or adult, responsible or, irresponsible; because, acting only as another’s instrument, his acts, within the scope of his authority, were those of his employer or constituent — quifacit per alium facitper se. And certainly a man, whose wife, with his knowledge, and during their cohabitanoy, had retailed spirits in his house contrary to law, even for her *294 own exclusive profit in fact, would, in judgment of law, be guilty himself of having kept a tippling house: (1) because, as he had the power to prevent and ought to have prevented it, his permitting it should be considered as ordering it, or making it his own act; (2) because the law would adjudge the profits as his; and (3) because the wife, being sub potestate viri, would not be punishable, and therefore, unless her husband be liable, the law might be openly evaded or violated with impunity.
And do not all the same reasons, apply with their full force, when a slave, in his master’s house, and with his master’s knowledge and approval, shall have kept a tippling house? Was not the slave, in a legal sense, perfectly subject to the master’s control? Was it not the master’s duty, knowing the fact of keeping a tippling house, to prevent it — and, not having done so, or even attempted to do it, should not the act of the slave be deemed that of the master? Did not the profits belong to the master, whatever may have been the secret understanding between himself and his slave? And, if .he be not subject to the penalty for such a violation of the penal laws of his country, may not every owner of a slave violate ihose salutary laws by using the instrumentality of his slave ostensibly for the actual benefit ■ofthe latter? '
It is our opinion that, when a slave, who is under his master’s control, keeps a tippling house with his master’s knowledge and permission, and in his house, the law should decide that it was the master's tippling house, and should hold him responsible for the penalties denounced against all keepers of such pestilent houses.
It is not necessary to show by direct and positive proof, that the slave kept the house in obedience to his master’s actual commands, or for his actual benefit. This the law presumes — and should not, in such a case as that now supposed, permit to be questioned; because, whatever might be the actual understanding as to the profits, it was the master’s legal duty to prevent the violation of the law, and he had a legal right to the profits, and could at any time appropriate them to his own use,
Wherefore, the judgment of the Circuit Court must be reversed, and the cause remandrd for a new trial.