Riley *v.* State, 43 Miss. R., 397.

ILLICIT RETAILING OF INTOXICATING LIQUORS WITHOUT LICENSE.

The proprietor of a drug store is liable for the acts of his agents or clerks in the unlawful sale of intoxicating drinks, even though such sales be without his knowledge and against his express orders.

In an indictment against a druggist for illicit sale of intoxicating liquors, it is not necessary to allege the name of the person to whom sold.

On the trial of an indictment for illicit traffic in vinous or spirituous liquors, proof of an agreement to sell is not sufficient; there must be proof of an actual delivery of the liquors. There need not be proof of payment, because a sale on credit is as much a violation of law as a sale for cash.

Error to the circuit court of Scott county. WATTS, J.

The case is fully stated in the opinion of the court. The plaintiff in error assigned the following errors:

1. The court erred in overruling the motion of the plaintiff in error to quash the indictment.

---

* See also Wharton Am. Cr. Law, 3135; Com. v. McCall, 1 Va. Cases, 271; Overbee v. Com., 1 Rob., 756; Com. v. Roby, 12 Pick., 496; State v. Prescott, 7 N. H., 291; State v. Babcock, 1 Conn., 401; State v. Tiglman, 11 Iredell, 514; Hines v. State, 8 Humph., 597; McCann v. State, 9 S. & M., 465; Boles v. State, 13 ib., 397; Organ v. State, 26 Miss., 76; People v. Douglass, 4 Cowen, 26; Eastwood v. People, 3 Parker C. R., 25; Capron v. State, 20 Geo., 752; Cornelius v. State, 7 Eng., 782; Caleb v. State, 39 Miss., 721; Jumpertz v. People, 21 Ills., 375; Coker v. State, 20 Ark., 54; Creek v. State, 24 Ind., 151; Reins v. People, 30 Ills., 256; Maher v. State, 8 Minn., 444; Madden v. State, 1 Kansas, 340.

2d. The court erred in granting the instructions asked for by the state.

3d. The court erred in refusing to grant the third instruction asked for by the plaintiff in error.

4th. The court erred in overruling the motion for a new trial.

*W. B. Shelby*, for plaintiff in error.

I will notice the errors assigned in their order. The first is, that the court erred in overruling the motion to quash the indictment. This motion is substantially as follows: That the "indictment is so vague and uncertain that it does not notify the defendant of the nature and cause of the accusation against him; because the indictment does not specify the person or persons to whom the defendant sold the spirituous liquors." The question raised by this motion is this: Must an indictment for retailing specify the name of the person or persons to whom the liquor was sold? This question certainly has never been decided by this court, and we are, therefore, compelled to rely on general principles, and the adjudication of the courts of other states, for its solution, and in the latter there is conflict. An indictment must be so plain and certain as to fully notify the accused of the " nature and cause " of the accusation against him. And it has been decided by this court, in the case of Shabe Williams v. The State (not yet reported), that " it is necessary to specify on the face of the indictment the criminal nature and degree of the offense," and " also the particular facts and circumstances which render the defendant guilty of that offense," so " that the defendant's acquittal or conviction may inure to his subsequent protection," and to enable him to prepare for his defense in the particular case.

Now, it may be conceded that the indictment in this case does set out the nature and degree of the offense, but I contend that it does not notify him of the "facts and circumstances." which render him guilty of the offense. One of the circumstances of one of the indictments of the offense, which, if set out in the indictment, would certainly the better enable the defendant to prepare for his defense, is the specifying the name of the person to whom the liquor is sold. If his name is specific,

the defendant may produce him at the trial to show his inno-
cence. No hardship is imposed upon the state by the adoption
of this rule, for doubtless in almost all cases of this character the
indictment is usually found upon the citation of the very person
to whom the liquor was sold; and it is, therefore, an easy mat-
ter to so specify in the indictment. Since the decision of this
court in Miazza v. The State, it is not necessary to specify the
particular time at which the liquor was sold. Miazza v. The
State, 36 M., 613. Now, if the time at which and the name of
the person to whom the liquor is sold can be omitted, then I in-
sist that all the facts and circumstances which render the de-
fendant guilty, which tend to point out and designate with cer-
tainty the offense with which he is charged, are wanting, and
that in consequence of such omission, he stands at great disad-
vantage in making his defense, and cannot use his subsequent
conviction or acquittal for his protection. 2 Wharton Criminal
Law, § 2443, 5th ed.; State v. Walker, 3 Harrington, 547; Com.
v. Thurlow, 24 Pick., 374; Vecles v. State, 10 Missouri, 498;
Caprity v. State, 1 Ind., 569.

The second error assigned is, that the court erred in granting
the instructions for the state. The first instruction is erroneous
in this, that it not only requires that the evidence that the liquor
was intended for culinary or medicinal purposes, should satisfy
the seller, but such evidence that a reasonable and prudent man
would act upon. By reference to the Revised Code, art. 8, p.
199, it will be seen that evidence is only required to be such as
would be satisfactory to the seller.

The third assignment of error is, that the court erred in re-
fusing the third instruction asked for by defendant. By refer-
ence to the testimony, it will be seen that the liquor was sold by
defendant's clerk, without his knowledge or consent, and in vio-
lation of positive instructions of defendant. The court, in re-
fusing the third instruction, refused to charge the jury that the
defendant was not criminally liable for the acts of his clerk or
agent, done without his assent, and in violation of his instruc-
tions. We think the refusal of the court to grant this instruc-
tion was erroneous. See 2 Wharton Criminal Law, § 2436;
Barnis v. State, 10 Conn., 398; Com. v. Putnam, 4 Gray, Mass.

The fourth assignment of error is the refusal of the court to grant the motion for a new trial. We respectfully refer the court to the testimony, and insist that it does not warrant the conviction.

*Jasper Myers*, late attorney general.

First. As to the sufficiency of the indictment. It is admitted that it is an open question whether or not the name of the party to whom the liquor was sold should appear in the indictment. That the language of the statute is substantially adhered to in the indictment, see Bishop on Criminal Procedure, § 374, vol. 1; ib., § 359. But counsel invoke that clause of the constitution of the state which secures the accused the right to be informed of "the nature and cause of the accusation against him." In this case, what is the "nature and cause of the accusation against the accused," or the "nature and degree of the offense?" In stating that the degree of the offense must be set out in the indictment, it is merely intended that those facts which are necessary to show, beyond possibility of mistake, what the degree of the offense is, should be set forth.

The mischief which the act was designed to remedy was the sale of vinous and spirituous liquors in small quantities. If the acts which constitute this mischief are clearly set forth, then the accused is thereby informed of the "nature and cause of the accusation against him." The degree of the offense is fixed by the statute. See the case of Murphy v. The State, 24 Miss., 595, 596. That was an indictment for trading with the slave. The court held that it was not necessary, in order to comply with that clause of the constitution, to specify the name of the slave, nor of the owner; but where the name of the slave and of the owner was omitted from the indictment, it was held that it was necessary to specify the article or commodity.

As to the particular facts and circumstances which render the defendant guilty of the offense, see Bishop on Criminal Procedure, § 274.

I contend that the particular facts necessary to render the defendant guilty of the offense, some of them, as, for instance,

"sale" "compounded of law and fact," are "specified on the face of the indictment."

As to the reasons cited to sustain the above rule, the defendant's acquittal or conviction may inure to his subsequent protection.   See 1 Bishop, § 196.

The old practice was to have a number of different counts, either for the same offense or for different offenses; and Chitty observes, "It is even no objection, either upon demurrer or upon arrest of judgment, that separate offenses of the same nature are joined against the said defendant.   1 Chitty Criminal Law, 248 *et seq.*   If evidence was offered and was applicable to any one of the counts, it would be applied to that count; and if one of the counts was sustained, it would be sufficient to sustain a conviction.

As to the second error assigned, viz., in giving the instructions for the state, I submit that there is no error.   The evidence of the good faith of the purchaser must be such as to satisfy a prudent man of the fact, and of such a character that a prudent man would act on it.   This is so, because the law presumes that every man has an ordinary amount of reason and prudence.

As to the third ground assigned as error, the instruction asked for is erroneous in this, that after laying down the principle that defendant is not criminally liable for acts of his clerk, contrary to his instructions, and without his knowledge or consent, is added, "and they must find the defendant not guilty."   In addition to the sales by his clerk, the defendant himself sold liquor.

*J. S. Morris*, attorney general.

In an indictment for unlawfully selling ardent or spirituous liquors, it is unnecessary to aver to whom they were sold, or even the number of persons.   See State v. Manger, 15 Vermont R., 190 ;  People v. Adams, 17 Wend., 47;  Com. v. Dove, 2 Virg. C., 25 ;  Com. v. Thurlow, 24 Pick., 374;  State v. Webster, 5 Halst., 293 ;  Morrison v. Com., 7 Dana, 218 ;  State v. Carter, 7 Humph., 158;  Canady v. The People, 17 Ills., 158 ; State v. Purnell, 16 Ark., 506.   And respecting the instructions given or refused by the court below, that they are in accordance

with the statute, Rev. Code, art. 9, p. 199, and in harmony with
the uniform current of adjudications by this court.    Whitton &
Ford v. State, 37 Miss., 379; Haynie v. State, 32 Miss., 400.

TARBELL, J.:

At the July special term of the Scott county circuit court,
for 1869, the plaintiff in error was indicted for a violation of
the provisions of the Code regulating "the sale of vinous and
spirituous liquors." At the October term of the same year the
cause came on to be tried, when the defendant submitted a mo-
tion to quash the indictment, which being denied, the defend-
ant excepted, and pleaded not guilty. The trial resulting in
the conviction of the accused, a motion was made for a new
trial, which was overruled, and the defendant excepted. The
judgment of the court was that the defendant be fined fifty dol-
lars and costs, and stand committed until paid. Having brought
the case to this court, the plaintiff in error submitted the follow-
ing "assignment of errors," viz:

1st. The court erred in overruling the motion of plaintiff in
error to quash the indictment.

2d. The court erred in granting instructions asked for the
state.

3d. The court erred in refusing third instruction asked by
plaintiff in error, defendant in the court below.

4th. The court erred in overruling the motion for a new
trial.

The following is the motion to quash:

Defendant moves the court to quash the indictment herein,
because the same is so vague, uncertain and indefinite that it
does not notify the defendant of the nature and cause of action
against him.

1st. Because said indictment does not specify or name the
person or persons to whom the defendant sold the spirituous
liquor alleged in the indictment to have been sold by him.

The motion for a new trial was on the following grounds:

1st. Because the court erred in overruling defendant's motion
to quash the indictment.

2d. Because the court erred in refusing instruction number three, asked for by defendant.

3d. Because the court erred in granting instructions asked by the state.

4th. Because the verdict is contrary to law and evidence.

The third instruction asked by defendant, and refused by the court, was in these words:

"That if they believe, from the evidence, that the defendant instructed his clerks not to sell liquor otherwise than in good faith for medicinal, culinary, and sacramental purposes, and said clerks did, without his knowledge and consent, violate said instructions, then the defendant is not criminally liable for such acts of his clerks, and they must find the defendant not guilty."

The following are the instructions asked by the state, and given by the court, to wit:

1st. That if the jury believe, from the evidence, that the defendant, J. L. Riley, or his agent, M. Edwards, being an apothecary, did sell spirituous liquors in any quantity less than one gallon, within two years next before finding this indictment, without requiring from the person who bought satisfactory evidence that it was for medicinal, sacramental, or culinary purposes, that the defendant, J. L. Riley, if he owned the liquors, or spirituous liquors, is guilty, and they will so find; and further, that the evidence so furnished must not only be satisfactory to the seller, but it must be such evidence that a reasonable and prudent man would act upon."

2d. In order to constitute a sale of liquors, if the liquors are delivered, and it is understood that they are to be paid for, it is not necessary that there should be actual payment of the money.

3d. That although one of the witnesses, Clack, may bear malice or enmity against Riley, yet the jury are to decide whether or not the law has been violated; and if there has been a violation of law, it will be no cause of acquittal that Clack may have presented the case to the grand jury because of his enmity.

Several witnesses were examined, whose testimony tended to show that defendant kept a tippling-shop; that he employed a clerk, who usually attended to the liquor trade; that the clerk

had positive instructions from Riley not to sell except in good faith for medicinal, culinary, or sacramental purposes. But it would seem, and the jury had a right to infer from the testimony before them, that the instructions to the clerk were in bad faith, or intended as a "subterfuge." The jury doubtless believed, and the evidence went to show, that liquor was sold, both by defendant and his clerk, by the bottle, without any questions as to its use; and that liquor was habitually drunk in his store by the glass, as a mere beverage, and not for medicinal purposes, and charged in account on the books of defendant, and settled thereon by the purchasers after an accumulation of drinks. It is clear, from an inspection of the record, of which the foregoing synopsis presents the material facts, that the only question to be considered by the court is, whether the indictment is fatally defective in omitting to state the name or names of the person or persons to whom the liquor was sold.

The fundamental test of an indictment is, that it shall set forth the "nature and cause of the accusation" against the defendant. Const. of Miss., art. 1, sec. 7.

It is true that indictments, like pleadings in civil cases, have in late years been greatly simplified; but whether in cases for violation of the law relative to "the sale of vinous and spirituous liquors" (Rev. Code, ch. 20, pp. 197 to 201), otherwise unobjectionable, would be, without designating the person or persons to whom the liquor is sold, a sufficient statement of the "nature and cause of the accusation," has not been distinctly presented to the courts of this state, so far as we are informed.

This point is, therefore, before the court of last resort, for the first time in Mississippi. General rules, however, applicable to indictments generally, founded upon statutes, have been stated by our predecessors, substantially in the language of authoritative authors. Several cases arising under the laws to suppress trade with slaves have also been considered, and though quoted, are not regarded as conclusive, because of the peculiarity of those statutes.

Boyd v. The State, 1 How., 163, involved several questions not bearing upon the case at bar; but in the course of the opinion, the court expressed the sentiment, believed to be correct in

theory and sound in practice, that " courts of justice are disposed to release the rigor of the ancient forms, when no injury can possibly result to the liabilities or rights of the accused." Ainsworth v. The State, 5 How., 242, was a case of *felony ;* but in relation to indictments, the court held that they should " describe the offense in the substantial language of the statute." Citing Ch. Cr. L. and Starkie's Cr. Pleadings, the court further say : " It is, in general, necessary, not only to set forth on the record all the circumstances which make up the statutable definition of the offense, but also to pursue the precise and technical language in which they are expressed."

To the same effect are the cases of Scott v. The State, 31 Miss., 473 ; Anthony v. The State, 13 S. & M., 263 ; Sarah v. The State, 28 Miss., 267 ; Ike v. The State, 23 Miss., 525 ; Williams v. The State, 42 Miss., 328.

The case of Miller v. The State, 5 How., 250, was an indictment under the statute against retailing. There were three counts in the indictment. The first count charged defendant with selling in less quantities than one gallon, and also with suffering the liquor so sold to be drank on his premises. The second count charged the defendant with giving away liquor to his guests without charge therefor. The third count contained a general charge of a violation of the act, but specified no instance.

On error, the first count was held bad for duplicity and uncertainty ; but the second count was held good. It does not appear that the guests were designated by name, or that objection was made on that ground. The defendant having been convicted, the verdict was sustained.

The case of Johnston v. The State, 7 S. & M., 58, was an indictment under the statute to suppress gaming, charging generally the playing of a game of cards, &c., without specifying the game. Mr. Franklin Smith, counsel for defendant, urged strenuously that the indictment did not identify the offense, and insisted that, " if the statute dispenses with all identification of the offense, it is unconstitutional." The court sustained the indictment and the statute, and affirmed the verdict of guilty.

The case of Noonan v. The State, 1 S. & M., 562, was an in-

dictment under section 5 of the act of 1842, for the regulation of the sale of vinous and spirituous liquors, &c. Though it alleged in general terms sale of *liquor* to a slave, &c., neither the *kind* of liquor sold, the name of the slave to whom sold, nor the name of the master or overseer, were given in the indictment. Counsel for defendant conceded the sufficiency of the indictment *under the act*, but urged that the statute was a violation of the constitutional guaranty that the accused shall be informed of the "nature and cause of the accusation," and of another provision of the constitution that no person can "be deprived of his life, liberty, or property, but by due course of law." The report of this case gives the arguments of counsel, Messrs. George Calhoun and John G. Ott, at length, and they are earnest and almost vehement appeals in behalf of personal rights, alleged to be imperiled by law, like the one upon which the indictment in that case was framed. The court sustained the constitutionality of the statute, saying, among other things, that the personal rights and privileges secured by the clauses of the constitution quoted were not infringed by the statute in question; that the constitution everywhere allows, and in some places exacts, the enactment of laws directly contravening the long-established rules of the common law; and when it enjoins that the rights of persons shall be "ascertained by law," and protected "by the common law," it intends to sanction only that species of legislation which shall in its assertion in criminal cases be equal, and not partial and particular; that "many of the rules of the common law are now vexatious, and have become unnecessary and unfitted to our occasions, and are properly repealed when they are found to obstruct the current of justice, or the interests of the whole people." * * * "The statute runs against several *mala prohibita*, which were unknown to the common law. The substance of the offense is the *selling* of vinous or spirituous liquors to a slave, without the master's permission, and not necessarily the selling of *a particular kind* of liquor to the slave of a particular individual. Every offense consists of the omission or commission of certain acts, under certain circumstances, and all which are its necessary ingredients, and must be stated. It certainly is not material to the proof of spirituous liquors to

define its particular kind by name, or to the proof of a person being a slave, to show his master's name. Nor is this a parallel case with those uncertain charges enumerated in being 'common thieves,' 'common evil-doers,' and such like. It cannot well be said that no one can well know how to defend himself from so general a charge, as it is deemed, when the statute provides it in the permit of the master of the slave to whom the article is sold, nor that he cannot plead the charge at bar, in abatement of a subsequent prosecution."

Murphy v. The State, 24 Miss., 590; and Same v. Same, 28 Miss., 637, were indictments under the act of March 6, 1850, "to suppress trade and barter with slaves." In the first named case the court, the very discriminating and learned Mr. Justice Yerger delivering the opinion, observes: "The indictment ought, in our opinion, to describe and identify the offense with such a degree of certainty that the accused and the court may know that the offense for which he is put upon trial is the same offense with that for which he stands indicted, in order that he may plead in bar a previous conviction or acquittal. An indictment which does not contain this degree of certainty does not communicate to the accused 'the nature and cause of the accusation' against him in the manner contemplated and designed by the bill of rights." * * * * * "We do not think it absolutely necessary to state in the indictment the name of the slave, or of his owner, &c. But it is necessary, where the name of the owner, employer, &c., is not given, that the article or commodity should be stated." * * * * "Of course, where the name of the owner, employer, &c., of the slave is given, there would not be any necessity to name the commodity, or on the trial to confine the state to the day named in the indictment, as the offense would thereby be sufficiently identified to enable the party to make his defense. In the present case the specific article sold is named in the indictment, and the court did not err, therefore, in refusing to quash the indictment or arrest the judgment."

In the second case, the counsel hurled against the statute upon which the indictment was based, an argument, which for invective, eloquent and patriotic denunciation, would have done

honor to the great Athenian orator of history. In fact, the rarest illustrations are culled by the counsel from literature, the classics, law and history, to prove the statute oppressive, dangerous to the liberty of the citizen, and unconstitutional. The court sustained the law, and affirmed the verdict of guilty.

The case of Haynie v. The State, 32 Miss., 400, was an indictment for selling liquor within five miles of the University of Mississippi, contrary to the law of February 28, 1848. Sec. 1 enacts that it shall not be lawful for any person to sell by retail, vinous or spirituous liquors in quantities less than five gallons, within five miles, &c. "*Provided, however*, Nothing herein shall be construed to prohibit the sale of vinous and spirituous liquors in less quantities from drug-stores for medicinal purposes." The following instruction given by the court below, was sustained on error as "unquestionably correct," by the High Court of Errors and Appeals, to wit:

"If the jury believe the defendant sold the liquor to Drigg, on his representation that it was for medicinal purposes, it devolves on the defendant to prove that the liquor was for medicinal purposes; and if he has failed to do this, the jury will find him guilty."

The case of McGuire v. The State, 37 Miss., 370, like that of Haynie v. State, just referred to, was an indictment under the law of February 28, 1848, for selling liquor, &c., within five miles of the State University. Defendants asked instructions, in substance, that "if the jury believe, from the evidence, that the defendant sold the liquor to the witness, *in good faith*, for medicinal purposes, then he is not guilty, although the jury may believe the witness imposed upon the defendant as to the object for which the liquor was in fact bought." Which were refused, and on writ of error, the refusal and verdict were sustained, though the then very accomplished attorney-general confessed error on another point; the court—opinion by the very able and learned Mr. Justice Handy—observing: "It is clear, from the evidence, that some of the liquor in this case was purchased for other than medicinal purposes; and hence the instructions which rely as a justification upon the belief of the defendant, founded on the statements of the purchaser, that

the liquor was for medicinal purposes, were properly refused. But in addition to this, it is quite apparent, from the testimony, that these representations of the purchaser were mere matters of form, and the manner in which they were made, clearly showed that they were understood not to show the real purpose of the purchase, and the defendant could not have been deceived as to its real purpose."

In the case of Miazza v. State, 36 Miss., 613, the indictment, which was for retailing without license, does not set forth the customers of the accused; but no objection to the omission was taken by counsel, and the point is not discussed by the court.

In the case of Rocco v. The State, 37 Miss., 367, the customers are set out—the indictment being for retailing, &c. The questions contested were mainly under pleas of former convictions.

In the case of Shabe Williams v. The State, 42 Miss., 328, Ch. J. Peyton, then associate justice, delivered an opinion, marked by his usual conciseness and precision. The rules laid down by him for drawing indictments, and his carefully condensed reasons therefor, are as follows, the indictment in that case being for felony : " It is necessary to specify on the face of the indictment the criminal nature and degree of the offense, which are conclusions of the law from the facts; and also the particular facts and circumstances which render the defendant guilty of that offense, for the following reasons :

1st. In order to *identify* the charge, lest the grand jury should find a bill for one offense, and the defendant be put on trial for another, without any authority.

2d. That the defendant's conviction or acquittal may inure to his subsequent protection, should he again be questioned on the same grounds; the offense, therefore, should be defined by such circumstances as will, in such case, enable him to plead a previous conviction or acquittal of the same *offense*.

3d. To warrant the court in granting or refusing any particular right or indulgence which the defendant might claim as an incident to the nature of the case.

4th. To enable the defendant to prepare for his defense in the particular case; or, if he prefer, to submit to the court by

demurrer, whether facts alleged (supposing them to be true), so support the conclusion in law as to render it necessary for him to make an answer to the charge.

5th. Finally, to enable the court, looking at the record, after conviction, to decide whether the facts charged are sufficient to support a conviction of the particular crime, and to warrant their judgment."

We have now briefly referred to most, if not all the cases in this state bearing directly or remotely upon the question under consideration, and we have found the uniform rule as to indictments for offenses created by statute to be, that the indictments in such cases shall pursue the precise and technical language of the statute. This is *especially* the rule, with limited exceptions, *even* as to *highly penal* offenses. If, therefore, the language of the statute is the proper guide in the *higher* grades of crime, it follows that as to *misdemeanors*, the ancient forms ought to be less rigorously adhered to; and, certainly, as to these, an indictment pursuing the language of the statute creating them ought to be sufficient.

There is another test, however, developed in the cases referred to, which cannot be overlooked either by this court or by the pleader, viz: that the indictment shall be sufficiently explicit to enable the defendant to plead it in the bar of another prosecution, *autrefois acquit* or *convict*.

This point has been discussed in several cases by our predecessors; and it is well settled that the plea may be sustained partly by the record and partly by parol, and that it need not necessarily be wholly sustained by the record, or, in the language of the court in the case of Noonan v. The State, 1 S. & M., 574:

" The evidence under a plea of *autrefois, acquit* or *convict*, is not exclusively of the record, but may be oral *to the extent required in the circumstances.*" In fact, it is not merely the right, but the duty of the party tendering this plea, to support it by proof *aliunde*, the record. On this subject, *vide* Rocco v. State, 37 Miss., 357, and numerous cases cited therein; State v. Smith, 22 Vt., 74; State v. Wentworth, 35 N. H., 444; Com. v. McAfee, 8 Dana, Ky. R., 28; 1 S. & M., 562; 33 Miss., 374; 30 ib., 613; 37 ib., 357.

Art. 8, Rev. Code, p. 198, reads thus: "It shall not be lawful for druggists, apothecaries, or physicians to sell any vinous or spirituous liquors in less quantity than one gallon, except for medicinal, sacramental, or culinary purposes only; and they shall in all cases require satisfactory evidence from the party offering to purchase, that the liquor is required for one of the purposes above stated; provided, that every druggist and apothecary, before he shall sell for the purposes aforesaid, shall make an affidavit and file the same in the office of the clerk of probate, that he will not sell such spirituous or vinous liquors for the purposes aforesaid without being himself fully satisfied from the evidence furnished him by the purchaser that the liquors are intended to be used for the purposes, and no other, above enumerated."

So much of Art. 9, p. 199, as bears upon this case, is as follows: * * * * "If any druggist, apothecary, or physician shall sell any vinous or spirituous liquor in a quantity less than one gallon, except for medicinal, sacramental, or culinary purposes, or shall permit the drinking of such liquors in his store, or upon his premises," * * * "or if any person shall directly, or by any subterfuge, violate any provision of this act," &c., &c.

The indictment in this case, omitting the formal parts, is as follows:

"That J. L. Riley, late of the county aforesaid, on the 18th day of July, A. D. 1868, with force and arms, in the county aforesaid, and within the jurisdiction of this court, being then and there a druggist, apothecary, or physician, and having a license as required by law to retail vinous and spirituous liquors in quantities less than one gallon for medicinal, sacramental, and culinary purposes, did then and there sell spirituous liquors in a quantity less than one gallon otherwise than in good faith, for medicinal, sacramental, or culinary purposes, contrary to the form of the statute," &c.

Upon careful analysis of the record, and a lengthy review of the principles laid down by our predecessors as to indictments upon statutes, we are conducted to the conclusion that for offenses under the laws regulating the sale of vinous and

spirituous liquors, the indictment is not defective if it fails to set forth the names of the persons to whom the liquors are sold.

Impelled by the earnest argument of counsel in behalf of the rights of citizens, and by an anxiety to determine this question with the rights of the community on the one hand, and of individuals on the other, constantly in view, we have given this case more consideration, if possible, than is usually bestowed upon cases apparently unimportant. We say *apparently* unimportant, but counsel have invested it with vast magnitude by involving the sacred question of personal rights. With the importance of these rights and the necessity of their protection, underlying our investigations, we are still of the opinion that an indictment for an offense of this kind omitting the names of the persons to whom the liquors are sold, otherwise unobjectionable, is in accordance with the practice and within the spirit of the criminal jurisprudence of Mississippi, as expressed in her Code and expounded by her most distinguished jurists. And hence, that the indictment in this case is not amenable to the objection interposed by counsel.

In consideration, however, of the question of personal rights which the counsel for the accused urge will be endangered by the rule sought to be enforced by the prosecution, a reference to authorities other than of our own state may serve to establish the future practice in Mississippi, in this respect, upon a permanent basis. From authors and courts of recognized authority, therefore, we quote a few general principles.

1st. It is a well-settled rule that in an indictment for an offense created by statute, it is sufficient to describe the offense in the words of the statute; and if, in any case, the defendant insists upon a greater particularity, it is for him to show that from the obvious intention of the legislature, or the known principles of law, the case falls within some exception to such general rule. But few exceptions to this rule are recognized. Wharton's Am. Cr. Law, vol. 1, sec. 364, and cases; Whiting v. State, 14 Conn., 487. This rule is more briefly stated in Romp v. The State, 3 Iowa, G. Green's R., 276: "When an offense is charged in the language of the statute, it is sufficient." So

in N. H.: "In indictments for misdemeanors, it is generally sufficient to describe the offense in the words of the statute." State v. Rust, 35 N. H., 4th Fogg., 438. In Georgia, the practice is as simple as the rule is briefly stated: "It is sufficient if the offense be stated in the indictment in the language of the Code." Hines v. The State, 26 Ga., 614. Archbold says, "It is better to pursue strictly the words of the statute."

2d. A sale is not constituted by mere agreement to sell; there must be a delivery of the liquor. But the payment need not actually be made; for a sale on credit is within the prohibition of selling, though the law would not enforce the payment. 1 Bishop on Cr. L., p. 610, sec. 1135, and cases; Banchor v. Warren, 33 N. H., 183; Pulse v. The State, 5 Humph., 108; Emerson v. Noble, 32 Me., 380; Com. v. Barnes, 8 Gray, 482; Mason v. Lathrop, 7 Gray, 354.

3d. The courts will not suffer a defendant to escape the charge for selling, by resorting to any artifice, when, in fact, a sale is made. 1 Bishop on Cr. L., p. 611, and cases; State v. Redden, 5 Harring. Del., 505; Com. v. Thayer, 8 Met., 525; Gloucester v. Bridgham, 28 Me., 60; Kober v. State of Ohio, 11 O. S., 444; Kimball v. People, 20 Ill., 348; State v. Hopkins, 4 Jones N. C., 305; State v. Wright, 4 Jones N. C., 305; Murphy v. State, 1 Ind., 336; State v. Kirkham, 1 Ire., 384; State v. Bell, 2 Jones N. C., 337.

4th. Whatever a man does through an agent or servant or clerk, whether he is himself absent or present, may be understood in law as done by himself; and he is therefore indictable in the same measure as if his own hand performed the act. 1 Bishop on Crim. Law, sec. 430–432–616–618–1001; 1 Bishop on Cr. L., p. 621, sec. 1155, and cases; Com. v. Park, 1 Gray, 555; Thompson v. State, 5 Humph., 138; Com. v. Major, 6 Dana, 293; Com. v. Nichols, 10 Met., 259; Schmidt v. The State, 14 Mo., 259; State v. Bowen, 31 Me., 520; State v. Stewart, 31 Me., 515; State v. Dow, 21 Vt., 484; Parker v. State, 4 Ohio State Rep., 563; Com. v. Park, 1 Gray, 544 (1854). According to the authorities, the servant, clerk, or agent is also responsible personally the same as if he violated the law on his own account or for his own profit. Bishop on Cr. L., p. 621,

sec. 1155, and cases; State v. Bugbee, 22 Vt., 32; State v. Haines, 35 N. H., 4 Fogg., 207.

5th. In N. Y., Vt., N. J., Ky., Va., Tenn., Ill., Ark., and other states, apparently North Carolina included, State v. Shaw, 2 Dev., 198, an indictment against a person for selling spirituous liquors by small measure, without a license, need not aver to whom they were sold, though in Missouri, Delaware, South Carolina, and perhaps some other states, it has been held that the name of the person to whom sold must be specified, if known. 2 Archbold's Cr. Pr. and Pl., p. 1004.

In Indiana, not only a given quantity, but the price for which the liquor is sold, must be averred, as well as the names of the persons to whom sales are made, or state that they are unknown. 16 Ind., 355; 2 Blackf., 289; 4 ib., 40.

The statutes of Massachusetts define two offenses, with different penalties; one against "common sellers," and the other against persons selling in a single instance, without license. In the first class of cases, the person to whom sales are made need not be averred; but in the second, the persons must be specified; yet in an indictment in that state for the sale of spirituous liquors, the court say, "the law does not require the conditions and stipulations, or the precise condition paid for the thing purchased," but that it "only requires a direct allegation of a sale of liquor, leaving the circumstances to be disclosed by the evidence offered to support the charge." Com. v. Thayer, 8 Met., 525 (1844); Com. v Kimball, 7 ib., 304 (1843); Com. v. Clark, 14 Gray, 367; Com. v Glumlow, 24 Pick., 374; Com. v. Hendric, 2 Gray, 503; Com. v Grey, 2 Gray, 501 (1854); 4 ib., 18 (1855); Com. v Odlin, 23 Pick., 275 (1839); Com. v. Conanth, 6 Gray, 482 (1856); Com. v Conanth, 14 ib., 374. Similar laws and rules prevail in Maine.

Although the point was not presented nor discussed, yet if we correctly interpret the case of Zumhoff v. The State, 4 G. Greene's Iowa R., 526, the courts of that state do not consider it at all necessary to set forth in an indictment for an illegal sale of liquor the names of the persons to whom the sale is made.

In Com. v. Baird, 4 Serg. & Rawle's Penn. R., 141, the in-

dictment charged that James Baird, with "force and arms," &c., without any license so to do, first had and obtained, according to law, and then and there, without such license, common and publicly, did sell and utter, and cause to be sold and uttered to sundry persons, divers quantities of rum, brandy, and whisky, and other spirituous liquors, by less measure than one pint, contrary to the form of the act of the assembly, &c., and "against the peace, dignity," &c. The court say : "This form of indictment having prevailed for eighty years; been adopted by successive attorney-generals ; the provisions of several acts being nearly, if not altogether, in the same words, the court will not say that all the prosecutions during that long time are erroneous, for it is admitted that this has been the only form. A continued and contemporaneous practice under a statute, in a matter merely formal, ought not to be lightly disturbed."

In the case of Sharp v. The State, 17 Ga. R., 291, it is briefly stated that the accused " was put upon his trial under an indictment charging him with the offense of retailing without license." And further, that " counsel for defendant moved to quash, on the ground that it should have charged him with 'misdemeanor.' The court overruled the motion," and observe: " The indictment stated the offense in the terms and language of the Code, or so plainly that the nature of the offense might be easily understood by the jury ; and that is all the law requires."

In the case of the State v. Rust, 4 Fogg., 35 N. H., 438, the indictment was for " the illegal sale of two glasses of intoxicating liquor, contrary to the act," etc. A motion to quash, on the ground that the charge was not made with sufficient certainty, nor so plainly and fully described as was required by the constitution and laws of the state, was overruled.

In the case of the State v. Wentworth, 35 N. H., 442, which was an indictment for selling liquor without license, the court say : " If the policy of the statute were directed to the prohibiting of such contracts, the selling which it punishes might properly be construed to mean the making a contract of sale ; and under that construction, the indictment might be required, in describing the offense, to set forth the party who was in the law the purchaser, if it undertook to allege the person to whom the

sale was made."     *     *     *,     "But it is clear that the object of the statute is not to prohibit the making of such sales as *contracts*, but to suppress the unlicensed selling."     *     *
" The whole force of the statute is directed against the *act of selling*, without regard to the qualities or *incidents* of the act, as a contract."

In the case of Canady v. The People, 17 Ill., 15, the court say: "The only question is whether an indictment for selling whisky in a less quantity than one gallon, without legal license to keep a grocery, is substantially defective for want of the name of the purchaser, or an allegation that he was unknown. We think not. The general averment of an illegal sale is in this respect sufficient, and this we think warranted, not only by the authorities, but the good sense of requiring only substantial facts necessary to enable the defendant to know the charge and to prepare his defense.

" The rule is abundantly sustained by the American decisions, as collected, Wharton's Cr. L., 815, though a contrary rule is adopted in some of the states.     *     *     *     *     *

" These great niceties and strictness in pleading should only be countenanced and supported when it is apparent that the defendant may be surprised on the trial, or unable to meet the charge, or make preparation for his defense, for want of greater certainty or particularity in the charge. Beyond this, it tends more to the evasion than to the investigation of the charge, and becomes rather a means of escaping punishment for crime than, of defense against the accusation."

In the case of the State v. Ladd, Swann's Tenn. R., vol. 2, p. 226, the court held that, " In the description of offenses created by statute, or such as are defined, and the punishment of them enlarged by statute, the safest and preferable mode is, to set forth the crime in the words of the statute ; as the only effect of too much particularity in the description, except so far as is necessary for the end of a proper defense, by a substantial description of the essentials of the crime imputed, is to facilitate the escape of offenders from the just punishment of their crimes, and should not be favored."

Carruthers, J., delivering the opinion, remarked: "In times

past, the adherence to strict and unnecessary technicalities to rescue criminals, has been a reproach to the administration of justice, brought the law into contempt, and encouraged crime." And ,he asks, " Shall we go any further, then, in shielding offenders, when they have, as in this case, upon a fair trial, been pronounced guilty by a jury, by opening another avenue to them for escape, upon what must be regarded as a technicality ? "

In the case of the People v. Adams, 17 Wend., 475, Ch. J. Nelson, a pure man and an able judge, in the earlier, if not in the better days of the New York bench, in a brief, yet comprehensive opinion, filling only a single page of the reports, yet embracing all the law on the subject, settles, beyond all controversy, the material point under consideration, as follows : " It is to be remarked that the offense upon the statute consists in *the act of selling* the spirituous liquors without the license ; and therefore the designation of the persons to whom sold is in no way material to constitute it. The question is simply one of pleading, whether certainty to a common intent requires the names of the persons to be given to whom the liquor was sold. The precedents seem to be all the other way. Our statutes on this subject appear to correspond substantially with the English acts of parliament, and were undoubtedly taken from them, forbidding the sale of distilled spirituous liquors, or strong water, as will be seen from a collection of them in 2 Burns' Justice, 185, *and onward.* 4 Wentworth, 504, contains the form of information upon these statutes, for selling without license, in which the mere *act of retailing* the liquor without license is averred. The persons to whom it was sold are not mentioned, or in any way referred to.

" The same remark is applicable to an information and complaint before the justices for selling ale without license. 1 Burns, 23–25. There is a precedent in 2 Chitt. Cr. Law, 434, for selling ale or beer on Sundays, in which the sale is charged as made to divers idle and ill-disposed persons, whose names to the jurors aforesaid are yet unknown. Here, though the persons are mentioned as unknown, yet, from the manner in which it is stated, it is, I think, to be inferred that the names were not

deemed material, as in the precedents, when they are so considered, it is indicated by the form.   In 4 Went., 525, a precedent is given for selling hard soap in a shape different from that required by the statute of 24 Geo. III, c. 48, § 14, in which the names of the persons are not mentioned, or in any way referred to.   The case is strictly analogous to the one under consideration, so far as respects the questions involved.   The precedents are clearly with the pleader in this case, and, upon a question the decision of which depends so much on the opinion of the courts as to what amounts to certainty to a common intent, these afford perhaps as safe a guide as can be found."

The general rule, already repeated in a variety of forms, is still differently expressed in 2 Burr., 1036, viz : " It is enough for the prosecutor to bring the case within the general purview of the statute upon which the indictment is founded, if that statute has general prohibitory words in it ; for when an indictment is brought upon a statute which has general prohibitory words in it, it is sufficient to charge the offense generally in the words of the statute."

Sir Matthew Hale, whose fame as an enlightened, humane, and Christian judge, has become the property of the bench and bar of the civilized world, observes in 2 P. C., 193, " that in favor of life, great strictness has been at all times required in point of indictments ; and the truth is, that it has grown to a blemish and inconvenience in the law and the administration thereof.   More offenders escape by the over-easy ear given to exceptions in indictments, than by their own innocence ; and many times gross murders, burglaries, robberies, and other heinous and crying offenses, escape by these unseemly niceties, to the reproach of the law, to the shame of the government and to the encouragement of villainy, and to the dishonor of God ; and it were very fit, that by some law, this overgrown curiosity and nicety were reformed, which is now become the disease of the law, and will, I fear, in time grow mortal, without some timely remedy."

That the illegal traffic in, and immoderate use of intoxicating liquors as a beverage, are evils of great magnitude, every impartial man will admit.   Acts in violation of the statute on the

subject, are committed in secret, frequently at night, and gener-ally in the absence of the owners of the liquor, by a servant or clerk, in hypocritical disregard of pretended instructions. The history of the legislation on this subject and of criminal jurisprudence, furnish unmistakable evidence of the difficulty encountered in the detection and punishment of offenders of this sort. The impunity with which the illegal traffic is carried on, not less than its ruinous consequences, forbids that a construc-tion shall obtain which, instead of advancing the objects of law and order, would narrow the means of detection and conse-quent suppression of the evils complained of.

Bishop on Cr. L., sec. 1128, well remarks: "Whoever takes the trouble to read the old English statutes on this subject, learns from recitation of facts therein made, that the enforce-ment of this class of laws was already difficult. And all who understand the doings of offenders and of courts of the present time, know that the same facts exist now.

"The question of the constitutionality of the enactments has been put forward, in this country, as an obstruction in their way; the question of their expediency has also been urged against them; and the question of their intrinsic rightfulness has entered largely into the matter."

And he might have truthfully added, that there is no law which is as resolutely resisted by the utmost ingenuity of the human mind and by the ablest legal talent, as the statutes regulating the traffic in intoxicating liquor. In considering a recent statute of Michigan, the supreme court of that state observed, in regard to that statute: "It assumes the traffic is hazardous to the morals and to the best interests of society, and, therefore, only grants immunities from fines which are denounced against offenders upon condition of providing ade-quate security for compensation to those who may suffer from an unbridled and iniquitous exercise of the right." 3 Mich., 314.

Finally, we are of the opinion that the indictment in this case, so far as it omits to set forth the persons to whom the liquor was sold, is not only justified by precedent, but is in accordance with the strictest principles of justice to all parties.

The character of the offense and the object of the law would justify the most rigid rules, but fortunately the conclusion at which we have arrived, neither violates nor endangers personal rights. The indictment in this case pursues the precise language of the statute; it presents the issue fairly, and is commendable for discarding technicalities, which, having long since ceased to serve any useful purpose, cannot be otherwise than mischievous, although honored monuments in the progress of the jurisprudence of the world.

Let the judgment of the court below be affirmed.