May Term,
1849.
———
WRIGHT
v.
BRANDIS.

*J. Pitcher*, for the defendants.

———

WRIGHT and Another *v.* BRANDIS.

A sale of either real or personal property, made with the intention of preventing creditors from collecting their demands, or damages about to be recovered of the vendor, if the vendee participate in the fraudulent intent, or have notice of it, is voidable at the suit of such creditors, notwithstanding the vendee may have paid an adequate consideration.

Tuesday,
May 29.

ERROR to the *Vanderburgh* Circuit Court.

SMITH, J.—On the 8th of *September*, 1845, *Matilda Johnson*, the complainant, commenced an action against *Thomas Sterling*, in the *Vanderburgh* Circuit Court for slander, and at a term commencing in the same month, for 1,000 dollars damages and her costs. While this suit was pending and a few days before judgment was obtained, *Sterling* sold all his property, real and personal, to *Brandis*. The present case arises from a bill in chancery praying the Court to annul the conveyance and set aside the sale for the purpose of subjecting the property to execution, on the ground that the sale was fraudulent. The cause went to a hearing on the bill, exhibits, the answer of *Brandis*, and several depositions, and the bill was dismissed.

There is no point of law involved in the case that is not well settled. A sale, either of real or personal property, made with the intention of hindering or preventing

creditors from collecting their demands of the vendor, if the vendee participate in the fraudulent intent or have notice of it, is undoubtedly voidable at the suit of such creditors, notwithstanding the vendee may have paid a full and adequate consideration. 1 Story's Eq. 4 ed. s. 369, and notes. Our present statute on the subject fully recognizes the principle. It declares all conveyances or assignments in writing, or otherwise, of land or chattels, &c., made with intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, debts, &c., shall be void, but it is provided that this enactment shall not affect the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor or of the fraud rendering such grantor's title void. R. S. p. 591, ss. 18, 21. It is obvious from this provision, that the legislature intended that the payment of a valuable consideration should be no protection to the purchaser's title, when the notice of the fraudulent intention of the vendor should be brought home to him.

It is proved by the depositions that, before the sale to *Brandis*, *Sterling* had offered the same property to two or three other persons, telling them his object was to put it out of his hands to prevent it from being reached by the judgment which it was expected the complainant would recover. It even appears that when one of these persons, *Lyon*, refused to receive the property because the transaction would be considered fraudulent, the latter had some conversation with *Sterling* as to the safety of putting sufficient confidence in *Brandis* to make the transfer to him, and after the sale to *Brandis*, *Sterling* told *Lyon* that he had put his property in the hands of *Brandis* to prevent the complainant from collecting her judgment. There can, then, be no doubt as to the fraudulent intention of *Sterling*, and it only remains to inquire whether *Brandis* participated in that intention, or had notice of it. The latter in his answer admits that he was informed of the pendency of the slander suit, but avers that he

bought the property in good faith, for the full value, for his own use, and without any notice or knowledge that *Sterling* was selling for the purpose of defrauding the complainant or rendering her judgment unavailable.

There was an attempt made by the complainant to prove that the price paid by him was much less than the real value of the property, but upon this point the opinions of the witnesses are so varient that, upon the whole, we cannot regard them as throwing any suspicion on the transaction. The most material proof bearing upon this part of the case consists of certain admissions made by *Brandis*.

One of the witnesses, *McNamarra*, told *Brandis*, sometime before the sale to him, that *Matilda Johnson* was about to obtain a judgment against *Sterling* which would sweep away all his property; and afterwards, in another conversation, in *September*, 1845, shortly before the deeds were made, the witness told *Brandis* that *Johnson* and *Sterling* were going on with their law suit, and *Brandis* then said it made no odds what judgment was recovered against *Sterling*, for he had nothing.

Another witness, *Eddersfield*, states that he had a conversation with *Brandis* the *Monday* after he had purchased of *Sterling*, and that *Brandis* said *Sterling* was a gentleman, and need not care what judgment was obtained against him, as he had sold all his property, real and personal, to him, (*Brandis*,) and had the money in his pocket. *Brandis* also told the witness that *Sterling* had previously offered to sell to another person, who would not purchase because of the pendency of the slander suit; and, to an inquiry of the witness, if he was safe in buying it, he replied that he was; that he had taken legal counsel on the subject, and it was all right. A third witness, *Littlepage*, testifies to an admission by *Brandis* that he knew the situation in which the property stood before he bought it, and had taken legal counsel as to whether he could safely make the purchase.

These admissions clearly prove that *Brandis* was aware of the pendency of the complainant's suit; that the da-

mages she was about to recover would probably amount to more than the value of all *Sterling's* property; that *Sterling* had been endeavoring to dispose of that property to other persons, who had refused to receive it, because, under such circumstances, the sale would be deemed fraudulent; and that the effect of the sale to him was to deprive the complainant of the means of making her judgment available. Although they do not prove his acknowledgment, in express words, that he knew *Sterling* was selling to him for the purpose of defrauding the complainant, they prove that he did know he was assisting *Sterling* in doing so, and under such circumstances as would have led any person of ordinary perception to infer that that was the object *Sterling* had chiefly in view. Indeed, they irresistibly lead us to the conclusion that he must have known that *Sterling's* object in selling all his property to him, while the complainant's suit was pending, was to avoid the effect of the expected judgment, and consequently, under the law applicable to transactions of that kind, that the sale must be deemed fraudulent.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, with directions to the Circuit Court to render a decree in conformity with the foregoing opinion.

*J. E. Blythe*, for the plaintiffs.

*J. Pitcher*, for the defendant.