Basye, Administrator of Wright, *v.* Daniel and Another.

A conveyance of real estate, to be valid against creditors, must be *bona fide*
and founded on a valuable consideration.

Tuesday,        ERROR to the *Spencer* Circuit Court.
June 5.
               Smith, J.—The bill filed in this case, which was dis-
         missed on the hearing below, charges that *Joseph Wright*
         died intestate in *January*, 1843, leaving a widow and
         several children; that the complainant, *Basye*, was duly
         appointed administrator; that all the assets which came
         to the hands of the latter, after deducting the amount
         to which the widow was entitled, was the sum of 35 dol-
         lars; that *Joseph Wright*, at the time of his death, was
         indebted to the complainant by several payments and
         notes, amounting, in the whole, to the sum of 463
         dollars.

               The complainant then charges that said *Joseph*, being
         the owner of two tracts of land containing about 250 acres,
         for the purpose of defrauding the complainant and his
         other creditors, by a deed, purporting to have been made
         in *February*, 1840, but not acknowledged, or, in fact, exe-
         cuted until the 15th of *September*, 1841, conveyed said
         tracts of land to his son, *Isaac Wright*, and his grandson,
         *John Milton Daniel;* and that the said *Joseph*, also, for the
         same purpose, on the 24th of *February*, 1841, by a bill of
         sale, without consideration, conveyed certain personal
         property, being all he owned, to the said *Daniel*.   The
         bill further charges, that said *Joseph* continued in the pos-

session and use of said land and personal property, until his death, when the personal property was removed by the said *Daniel*, who refuses to account, &c.

*Isaac Wright, John Milton Daniel,* and the other heirs of *Joseph Wright,* are made defendants. The prayer of the bill is, that the deed and bill of sale before mentioned may be decreed fraudulent; that said real estate be ordered to be sold and made assets; and that *John Milton Daniel* be required to account for the personal property received by him.

*Isaac Wright,* in his answer, admits that he was a citizen of *Louisiana* at the time, and did not know of the execution of the deed to him. He does not remember how long it was after the execution before he was informed of it, but thinks it was not more than three weeks. He cannot state the precise consideration paid by him, but says the most of it was for money he had been letting his father have from time to time for twenty years and for groceries paid in the same way. He says he advanced 185 dollars in cash to assist his father in entering one of the tracts, and that he advanced the money, 250 dollars, to pay for the other tract when it was purchased; that, he believes, he paid, in money, work, &c., in building houses and improving the farm, to the amount of 800 dollars, from 1821 to 1826; that he paid 200 dollars in 1842; and that, to the best of his recollection, he paid, between 1820 and 1842, in groceries and small sums of money, 600 dollars. He says said *Joseph* was to re-pay these sums, and, in default thereof, was to convey the land to the respondent or to him and any one of his relations whom he might select, but that his father was to have his own time to make such payments or such conveyance; that he accordingly selected his nephew, *J. M. Daniel;* and, when the deed was made, *Joseph Wright* was very old and infirm, and had given up all hopes of making money to pay the respondent; and this the respondent believes was the reason the deed was made at the time it bears date, and without the respondent's knowledge. He says said *Joseph* was not indebted to an

amount exceeding 25 dollars when said deed was made, that the debts due the complainant were contracted afterwards, and that the said notes and judgments were fraudulently obtained.

*John Milton Daniel* says, in his answer, that the consideration for said land was fully paid by him and *Isaac Wright*. He does not recollect how much he paid, but believes he paid near 300 dollars, of which 100 dollars, or thereabouts, were his own private funds, and the remainder was furnished by *Isaac Wright*. He says he paid a valuable consideration in money, groceries, and other articles not recollected, for the personal property. He cannot say whether he paid the whole consideration mentioned in the bill of sale, but knows he paid near that sum and as much as the property was worth, and believes he paid most of it previous to the time the bill of sale was made, and a part of it on the same day the bill of sale was made.

There are several depositions, from which we gather the following facts: The debts due the complainant were contracted in the fall of 1840, in the purchase of stock, or agricultural produce for the lading of a trading boat, by *Levin Wright*, one of the sons of the said *Joseph*, and for which the said *Levin* gave notes to divers persons with the said *Joseph* as security. *Levin Wright* soon after died insolvent. The notes held by the complainant were purchased by him of the original payees, at the request, or, at least with the consent and approbation of the said *Joseph Wright*. Though the deed for the real estate purports to be dated *February*, 1840, and there is some evidence that it was prepared at that time, we think it is sufficiently proved that it was not fully executed and delivered until after the debts due the complainant were contracted, and that it was, in fact, then executed to prevent the property from being taken in execution for those debts. One of the witnesses testifies that it was executed for that purpose by his advice. *Joseph Wright* continued in the possession and use, both of the real estate and personal property, until his death, in *January*, 1843. The

deed and bill of sale covered all the property he owned.
*John Milton Daniel* was a minor at the time the deeds
were executed, and was possessed of no visible means of
paying any considerable part of the consideration.

On the part of the defendants, it was proved that *Isaac Wright* lived with his father several years after he became of age, that he advanced considerable sums of money to assist in paying for the land at the time it was purchased, and that he had, by his labor and otherwise, contributed largely towards the expenses of clearing the land and erecting buildings. In 1823, *Isaac Wright* removed to *New Orleans*, where he continued to reside, having been back but once in about 15 years, and then for a few hours only; but he frequently sent groceries, and sometimes sums of money to his father, and there appears to have been an understanding that, in consequence of the assistance he had thus afforded to his parents, he was to have some interest in the land, but there is no evidence, and, indeed, he does not so aver in his answer, that there was ever any definite contract of sale.

Upon the whole, considering the relation in which the parties stood, that, by these conveyances, *Joseph Wright* stripped himself of all his property, that he did so with the intention of preventing it from being taken for the payment of the debts due the complainant, and for which he had become security; that the deed was executed without the knowledge of *Isaac Wright*, the only one of the grantees by whom anything like a valuable consideration is claimed to have been paid, the very indefinite and unsatisfactory statement of the amount of the consideration which he alleges he paid at intervals through a long course of years in money and groceries, and of which he seems to have kept no account whatever, and of which there is no averment or proof of any specific sums or amounts; and that *Joseph Wright* was permitted to continue in the full use and enjoyment of all the property thus attempted to be transferred until his death, we think the presumption against the validity both of the deed and bill of sale is so strong that they ought not to be supported. A deed

May Term,
1849.

must be founded upon a valuable consideration, and must also be *bona fide* to be valid, as against existing creditors; and, taking into view all the circumstances of the present case, it appears to us that neither of the instruments referred to can be so regarded. *Venable et al.* v. *Bank of United States*, 2 Peters, 107.—1 Story's Eq. s. 353.

*Per Curiam.*—The decree is reversed. Cause remanded, with instructions to the Circuit Court to render a decree in conformity with the above opinion.

*J. Pitcher*, for the plaintiff.

*S. Yandes*, for the defendants.