Esta G. ARNOLD, Opal Arnold, Charles Larry Arnold and E. G. Arnold Oil & Parts Co., Inc., Defendants-Appellants,

Fort Wayne National Bank,
Non-Appealing Defendant,

v.

Kenneth DIRRIM, Wynell Dirrim, Individually and as Representatives of a Class, Plaintiffs-Appellees.

No. 3–1077A260.

Court of Appeals of Indiana,
Third District.

Dec. 20, 1979.

444

Vincent J. Heiny, Snouffer, Haller & Colvin, Fort Wayne, John Whiteleather, Jr., Whiteleather & Whiteleather, Columbia City, for defendants-appellants.

Martin T. Fletcher, Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, for plaintiffs-appellees.

HOFFMAN, Judge.

On January 10, 1977 judgment in a class action suit was rendered against defendant-appellant Esta G. Arnold (Esta) and other persons not parties here in the sum of $553,439.36. The instant case arises out of efforts by plaintiffs to enforce collection of that judgment through a proceedings supplemental action. In the proceedings supplemental, the trial court found that certain property transfers by Esta to defendants-appellants Opal Arnold (Opal), Charles Larry Arnold (Charles) and E. G. Arnold Oil & Parts Co., Inc. (Parts Co.) were fraudulent conveyances and void as to plaintiffs.

Defendants have posited the following issues on appeal:

(1) whether the trial court erred in finding the property transfers to be fraudulent;

(2) whether the trial court erred in failing to joint the remaindermen of a spendthrift trust as parties;

(3) whether the trial court erred in granting discovery sanctions against Esta;

(4) whether the trial court erred in setting the trial date of this cause;

(5) whether the trial court erred in denying defendants' motions for change of venue; and

(6) whether the trial court erred in sustaining objections to four questions propounded to Esta and Opal during their direct examinations.

Reviewing the entire record discloses this sequence of events: On July 21, 1972 plaintiffs commenced a lawsuit alleging violations of the Indiana Securities Act. Thereafter Esta was joined as a party defendant and the suit was certified as a class action. The trial was held from May 12–19, 1976 and judgment was subsequently decreed for plaintiffs. On April 23, 1976 Esta transferred by warranty deed the only piece of real estate held in his sole name to the Parts Co., a corporation whose shareholders consisted of Esta, Opal, his wife, and their sons. The consideration for this conveyance was an unsecured promissory note from the Parts Co. for $15,000 even though the fair market value of the property was $25,000. Significantly, no payments of principal or interest were ever made by the Parts Co. on its note.

On May 7, 1976 Esta transferred securities having an aggregate value of $168,000 to an irrevocable spendthrift trust created on the same date. These securities represented all stock owned by Esta in his name only except for some stock pledged to Farmers Loan & Trust Company of Columbia City (Farmers). Under this trust agreement Esta reserved a joint right to the income of the corpus for life. However Esta instructed the trustee to place this net income into a joint checking account in the names of Opal and Charles. Although Opal was also a settlor of the trust, no assets in her name were ever transferred to the trust.

On January 14, 1977, four days after judgment was rendered against Esta in the class action suit, a writ of execution was issued to the Sheriff of Whitley County and he was instructed by plaintiffs to levy upon Esta's Central Soya and NIPSCO stock which had been pledged as collateral for a loan at Farmers. When the Sheriff went to Farmers on January 19 in order to levy upon the stock, he discovered that the bank no longer had possession of it.

It was revealed at trial that on the previous day, January 18, Esta and Opal had engaged in a series of transactions beginning at Citizens National Bank of Whitley County (Citizens) which had as its object the withdrawal of the pledged securities from Farmers. At Citizens Esta drew a check on the Parts Co. account for $15,000 payable to Opal. Although the Parts Co. had printed checks bearing its corporate name, this particular check was not of that form. Opal also wrote a check for $10,000 which was drawn on a joint checking account she held with Charles at the Fort Wayne National Bank (National). This was the same checking account that Esta had directed the trustee to deposit the income of the spendthrift trust. Opal then withdrew $3,000 from a joint savings account she maintained with Charles at Citizens. The sum of these transactions totaled $28,000 and Opal used this money to purchase a cashier's check from Citizens payable to herself in that amount.

Later that morning Opal and Esta proceeded to Farmers and informed the bank officials that they wished to pay off Esta's $28,000 note with the bank and wanted the Central Soya and NIPSCO stock released from the pledge. Curiously Opal could not explain why they suddenly decided to settle this obligation even though Esta testified that it was done because Opal was harassing him to pay it. Opal endorsed the cashier's check to Farmers and the securities were returned to them.

The couple then went to the trust department of National where they met with Thomas Quirk, a trust officer. Quirk was instructed by Esta to sell the Central Soya and NIPSCO stock at once. Esta directed Quirk to disburse $28,000 worth of the proceeds as follows: $15,000 to the Parts Co.; $3,000 to Charles and $10,000 to Opal. Quirk understood that the balance of the proceeds was to become part of the spendthrift trust. The stock was sold the same day as this meeting and generated $47,000.

On January 19 John Truesdell, another trust officer from the bank, notified Esta that his instructions had been carried out. Esta, however, claimed that he had only intended for $28,000 worth of the stock to be sold. On January 25 National received the proceeds of the stock sale and disbursed $28,000 pursuant to Esta's original instructions. These disbursements were reflected as a distribution of principal from the spendthrift trust. The checks to Opal and Charles were deposited in their joint savings account at Citizens. Truesdell used the balance of the proceeds from the stock sale to repurchase shares of Central Soya and NIPSCO. He also deposited $6,343.83 in a savings account for the benefit of the trust.

Esta and Opal returned to the trust department on February 1. At that time Esta stated that he had never intended for the repurchased stock to become an asset of the spendthrift trust and that his intentions from the start were to sell all the original shares and distribute the proceeds to his wife. In the course of this conversation, Esta asked the bank to falsify its records so that there would not be any reference to the Central Soya or NIPSCO stock being part of the trust. Esta told the bank to sell the repurchased shares immediately and to deposit the proceeds in his wife's checking account along with the $6,343.83 from the trust savings account. The bank sold the stock and disbursed the proceeds of $17,720.91 along with the trust savings account pursuant to Esta's directions.

On February 14 Opal returned to National and closed the checking account there by drawing a check for $20,451.15 payable to herself. With this money she purchased two cashier's checks one of which was payable to her in the sum of $10,451.15. She cashed this check later that day. The other check was written to Sherrill Colvin, one of defendants' attorneys in this cause.

On this same day Charles went to Citizens and withdrew $14,312 from the joint savings account, which he then delivered to Opal. At Esta's behest Opal spent $10,000 of this money to lease a 1977 Cadillac. This lease was unusual in that it required an initial lease payment of $10,000 and a second payment of $100 in three years. As a result of these various transactions Esta retained no assets in his name with which to satisfy plaintiffs' judgment.

The principal question raised by defendants is whether the trial court erred in finding these transactions to be fraudulent: 1) the real estate conveyance; 2) the transfers of securities to the trust; and 3) the disposition of the proceeds from the sale of the Central Soya and NIPSCO stock. On appeal of claims which have been tried to the court without a jury, the judgment will not be disturbed unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Ind. Rules of Procedure, Trial Rule 52(A). The findings or judgment will be found clearly erroneous only when on the entire record the reviewing court is left with the definite and firm conviction that a mistake has been committed. *University Casework Systems, Inc. v. Bahre* (1977), Ind.App., 362 N.E.2d 155.

In analyzing the evidentiary underpinnings of these findings of fact, it is important to note that the determination of the character of a conveyance as fraudulent or otherwise involves the consideration of various elements and factors. Moreover, there are certain circumstances which so frequently attend transfers to defraud creditors that they are recognized as indicia or badges of fraud. These badges form important links in the chain of evidence that fixes the character of the challenged transactions. Consequently, where there is a concurrence of several such badges of fraud, an inference of fraudulent intent may be warranted. *Kane v. Drake* (1866), 27 Ind. 29.

The seminal case of *Milburn v. Phillips et al.* (1894), 136 Ind. 680, 34 N.E. 983, 36 N.E. 360, mentions numerous badges of fraud and is especially valuable in the consideration of the issues involved here. Among the most common indicia of fraud is the transfer of property by a debtor during the pendency of a suit against him, especial-

ly where the transfer renders the debtor insolvent or greatly reduces his estate. *See also: Shean et al. v. Shay et al.* (1873), 42 Ind. 375; *Rogers v. Evans* (1852), 3 Ind. 574; *Wright v. Brandis* (1849), 1 Ind. 336; 37 Am.Jur.2d, *Fraudulent Conveyances*, § 11 (1968). Evidence of a series of contemporaneous transactions the result of which is to strip a debtor of all his property available for execution is not an ordinary transaction and is therefore a badge of fraud. *See also: Hoffman et ·al. v. Henderson* (1896), 145 Ind. 613, 44 N.E. 629. Another reliable indication of fraudulent intent is the presence of secret or hurried transactions not in the usual mode of doing business. Indeed any transaction conducted in a manner differing from customary methods may be fraudulent. It is also a badge of fraud that the debtor retains benefits over the property transferred. One may not be the beneficial owner of property and still have it exempt from his debts. *See also: New et al. v. Sailors* (1888), 114 Ind. 407, 16 N.E. 609; *Basye v. Daniel* (1849), 1 Ind. 378; 37 Am.Jur.2d, *Fraudulent Conveyances*, § 27 (1968). Furthermore, the fact that no consideration was given or that the consideration was greatly below the value of the property is recognized as a prime factor in determining whether a transaction is to be deemed fraudulent. *See also: Gable et al. v. Columbus Cigar Company* (1894), 140 Ind. 563, 38 N.E. 474. Finally, a transfer of property between members of a family may evince a fraudulent intent.

■ Applying these general principles to the case at bar, it is evident that the findings of fact were not clearly erroneous. First, all of these disputed transactions occurred during the pendency of plaintiffs' lawsuit against Esta. The trial court could also consider the fact that the succession of transactions effectively deprived plaintiffs of any property from which their claims might otherwise have been satisfied. It was also inferable that the use of cashier's checks and the attempt to falsify the bank records were designed to deceive plaintiffs in tracing Esta's property. The lease of the car and the handling of thousands of dollars in currency were conceded to be unusual

activities. Retaining a life interest in the trust as well as the fact that the stock transfers were made to a *spendthrift* trust are indicative of fraudulent intent. Further, no consideration was given for any of the transfers. Nor can the fact that the recipients of the transfers were relatives of Esta, namely his wife, son and family-owned corporation be ignored. This evidence was sufficient to justify the conclusion that the conveyances were fraudulent.

■ In an effort to obviate this conclusion, defendants first argue there was a fair consideration paid for each of the disputed transfers. This argument is immaterial. Even if defendants had proven consideration for the transactions, it would not have precluded a finding of fraudulent intent on the part of Esta.

"A conveyance is not protected, although full consideration has been paid, where grantor and grantee unite in a fraudulent design to defraud creditors." *Milburn v. Phillips, supra,* 34 N.E. at 985. *See also: Gable v. Columbus Cigar Company, supra.*

The trial court found and the evidence abundantly established that defendants conspired and participated in Esta's attempt to defeat plaintiff creditors.

"The loss of the amount paid by a fraudulent grantee is the penalty that the law inflicts for the fraudulent transaction. To refund to such a grantee the amount he has paid would be to destroy the penalty. Such a holding would destroy the salutary restraints which the law has built up against such transactions, by removing all danger of loss. When once a party has been convicted of fraud, the law refuses its aid to him in any manner or form, and leaves him, as to that transaction, just where it finds him." *Seivers v. Dickover et al.* (1885), 101 Ind. 495, at 498.

■ Defendants also claim that Opal possessed a security interest in the Central Soya and NIPSCO stock because she paid Esta's debt to Farmers for which the stock had been pledged and then personally delivered the stock to National to be sold. This

contention is unavailing insofar as the trial court found that Esta delivered the stock to National. Defendants have not shown that this finding was clearly erroneous.

Defendants also allege there were valid purposes for creating the spendthrift trust. This allegation can be rejected outright since it is merely an invitation to reweigh the evidence. As noted earlier the trail court's findings on this matter were not clearly erroneous.

■ Defendants next maintain Esta was not insolvent when the transfers to the trust occurred and recite several alleged assets that plaintiffs could reach. However, defendants ignore his liabilities including the plaintiffs' pending claim for $553,-000. An existing claim against a debtor is to be considered in ascertaining whether the debtor was insolvent at the time of the conveyance, whether such claim was reduced to judgment or not. *Davis v. Nielson* (1973), 9 Wash.App. 864, 515 P.2d 995. Comparing Esta's purported assets along with his liabilities, it is evident that he was insolvent when he made the transfers. Moreover, Esta's own testimony revealed that he possessed no assets at trial.

■ Defendants final attack on the findings of fact is that it was inconsistent to set aside the real estate conveyance but not the transfer of shares in the Parts Co. by Esta to his sons without payment. The evidence discloses that on the same date as the real estate transaction Esta and Opal conveyed stock to their three sons pursuant to a longstanding family agreement. Plaintiffs did not seek to set aside this transfer. Defendants have not cited any authority on this point nor have they tendered any cogent argument. Accordingly, the issue is waived. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

■ Defendants next assail the judgment below on the grounds that prosecution of the action was contrary to Ind. Rules of Procedure, Trial Rule 19 insofar as the remaindermen of the spendthrift trust were not joined as parties. The record, however, shows that none of the defendants raised this issue prior to judgment. It has been recently settled that the failure to move before or during trial to join an indispensable party constitutes a waiver under TR. 19(C). *Ligon Specialized Hauler, Inc. v. Hott* (1979), Ind.App., 384 N.E.2d 1071. Assuming *arguendo*, that the remaindermen were indispensable, any alleged error was waived by the defendants' failure to raise this question in a timely fashion.

■ Defendants also assign as error the action of the trial court in granting plaintiffs' motion for sanctions and ordering that certain facts be taken as established. In general, these facts recited that Esta's transfers of certain property were made with the intent to delay, hinder and defraud the plaintiff creditors. Defendants submit that the sanction order was void because Esta had not received any notice of the deposition nor was a hearing held on the motion for sanctions. If the sanction order was void, defendants suggest a new trial is necessary since the facts relating to the fraudulent conveyances were not otherwise established.

The events surrounding the sanction order may be explained in the following way: On January 21, 1977, plaintiffs served Esta with a subpoena duces tecum which ordered him to appear for a deposition on January 28 and to produce some designated documents. Esta failed to comply with this subpoena. The trial court then modified its order so that the deposition and production dates were continued to February 28. On February 25 Esta by way of counsel filed a motion to continue the deposition which stated that Esta had moved to Arizona for three months due to poor health. In light of Esta's absence on February 28, the trial court granted plaintiffs' motion for sanctions.

In this order the trial court ruled that unless Esta submitted to a deposition prior to the hearing on the proceedings supplemental, the facts alleged in the plaintiffs' verified motion for proceedings supplemental would be deemed established against Esta and he would not be permitted to controvert those facts. Notwithstanding

this order, plaintiffs at the proceedings supplemental hearing introduced evidence on all material allegations contained in their verified motion. After two days of considerable testimony and the admission of numerous exhibits, plaintiffs rested. It was then that defense counsel intimated Esta might return to testify. Thereafter on March 25 the trial court amended its sanction order so that Esta could controvert the facts deemed established against him.

Assuming for the sake of argument that the sanction order was void, defendants have not demonstrated any prejudice in its issuance. That portion of the order ruling that plaintiffs need not establish certain facts was rendered moot by plaintiffs' presentation of evidence at the proceedings supplemental. Moreover, the trial court modified the order so that Esta could introduce evidence as well. There was no error here.

Also specified as error is the trial court's denial of defendants' motion to vacate the proceedings which was filed the day of trial. They urge that the setting of the trial date violated the requirements of Ind. Rules of Procedure, Trial Rule 69(E)(4) which states in part:

"The date fixed for appearance and hearing . . . shall not be less than twenty [20] days after service."

The record indicates that all defendants were served with notice of the proceedings supplemental on February 23. Opal and Charles were ordered to appear on March 15. Esta was ordered to appear on March 14 and 15. Disregarding the date of service as required by Ind. Rules of Procedure, Trial Rule 6(A), it is evident that March 15 was the twentieth day after service. Although the date fixed for hearing cannot be "less than twenty days", it clearly can occur on the twentieth day. With respect to Opal and Charles, the setting did not violate TR. 69(E)(4).

While the setting of March 14 did violate TR. 69(E)(4) as to Esta, he did not bring this fact to the court's attention until the day of trial even though he knew of the setting nineteen days earlier. Under

these circumstances the motion was untimely made. It should be observed that TR. 69(E)(4) requires the trial court to fix the hearing date *ex parte* upon the filing of a proper motion. Thus, in fixing the hearing date the trial court cannot know precisely when a defendant will be located and served. If at the time of service the date fixed is inconvenient or accords less than twenty days, then it becomes incumbent upon the defendant to promptly request a new setting. No error was committed in denying the motion to vacate.

Another contention advanced by the defendants is that the trial court erred when it denied their motions for change of venue. Defendants insist they were entitled to an automatic change of venue pursuant to Ind. Rules of Procedure, Trial Rule 76(1). Plaintiffs, on the other hand, maintain there is no right to a change of venue in proceedings supplemental. Even if such right exists, it is asserted that defendants waived this right by failing to make a timely objection when the trial date was set.

The record discloses that on February 22, 1977 the plaintiffs filed a verified motion for proceedings supplemental at which time the hearing on this motion was set for March 14–15, 1977. All defendants were served with notice of these dates on February 23, 1977. Defendants Opal, Charles and the Parts Co. filed motions for change of venue on March 1, 1977. On March 2, 1977 Esta filed his motion for change of venue.

Since Esta was a party to the original action wherein he was held liable for certain stock sales, he was not entitled to a change of venue. Under Ind. Rules of Procedure, Trial Rule 69 proceedings supplemental are a means of remedying a failure by a defendant to pay a money judgment. Such proceedings are but a continuation of the original action, and notwithstanding ancient cases which construed the law when proceedings supplemental were deemed separate actions, *see: Burkett et al. v. Holman* (1885), 104 Ind. 6, 3 N.E. 406, and which held a change of venue to be appropriate, a change of venue is not now contemplated or

permitted. *Linton v. Linton* (1975), Ind. App., 339 N.E.2d 96; *State ex rel. Greebel v. Endsley* (1978), Ind., 379 N.E.2d 440.

 As to the other defendants, they waived any right they may have had to a change of venue by failing to make a prompt objection to the trial date. Trial Rule 76(7) reads as follows:

"Provided further, a party shall be deemed to have waived a request for a change of judge or county if a cause is set for trail before the expiration of the date within which a party may ask for a change, evidenced by an order book entry and no objection is made thereto by a party as soon as such party learns of the setting for trial. Such objection, however, must be made promptly and entered of record, accompanied with a motion for a change from the judge or county (as the case may be) and filed with the court."

When found applicable this subdivision has been strictly enforced. For example, in *State ex rel. Krochta v. Superior Court et al.* (1974), 262 Ind. 257, 314 N.E.2d 740, the trial court on March 15 set the trial for March 19 with the knowledge of the parties. On March 18 a motion for change of venue was filed and objections to the trial setting were filed the following day. It was held that the movants had forfeited their right to a venue change by failing to object when the trial court set the matter for trial. And in *State ex rel. Hepler v. Superior Court* (1975), 263 Ind. 196, 328 N.E.2d 218, the trial court on January 29 set the trial for March 13 in the presence of the movant's counsel. On February 4 a change of venue was requested. Again it was held that the failure to make a timely objection to the trial date waived any right to an automatic change of venue.

In the case at bar, the defendants became aware of the trial date on February 23 yet waited until March 1 to file their venue motions. This was too late. To preserve their right to an automatic change of venue, defendants should have objected as soon as they learned of the trial setting. To hold otherwise would only encourage unnecessary delays occasioned by late filing of change of venue motions which have as one of their objects the postponement or avoidance of a trial. The trial court's ruling was therefore correct.

 Lastly, defendants claim the trial court erred in sustaining objections to four questions propounded to Esta and Opal during their direct examinations. Defendants insist the excluded evidence was vital to their case since it tended to establish that Esta had mismanaged his funds and had lost over $200,000 in recent years. It is argued that if these bad investments could have been shown, a fair consideration for the creation of the spendthrift trust and the transfer to Opal of an interest in the income and corpus of the trust could have been proven.

Three of the questions in dispute related to the amount of money Esta had dissipated over the past few years. Defense counsel also sought to ask Esta to describe the result of his management of family funds during those same years. The record is replete with instances where Esta and Opal testified concerning the extent of his financial reverses and their purposes in setting up the trust. Under these circumstances, any purported error was harmless since the facts sought to be established by such excluded evidence were fully established by other evidence. *Gorney v. Gorney, Guardian* (1962), 136 Ind.App. 96, 181 N.E.2d 779.

No reversible error having been demonstrated, the judgment of the trial court must be affirmed.

Affirmed.

GARRARD, P. J., and STATON, J., concur.