C.W. JACKSON,
Appellant/Cross–Appellee
(Defendant Below),

and

Jackson Plastics Company; Excelarium Products Corporation; Columbus Air Corporation; Tiger Development Company; and Marguerite L. Jackson, Appellants/Cross–Appellees (Garnishee–Defendants Below),

v.

George E. RUSSELL,
Appellee/Cross–Appellant
(Plaintiff Below).

No. 06A01–8606–CV–151.

Court of Appeals of Indiana,
First District.

Jan. 17, 1989.

Rehearing Denied March 7, 1989.

Robert J. DuComb, Jr., Sharon B. Shively, Sacks, Tierney, Kasen & Kerrick, P.A., Phoenix, Ariz., for appellant/cross-appellee.

Peter L. Obremskey, Parr, Richey, Obremskey & Morton, Lebanon, for appellants.

Robert F. Zoccola, Alan S. Brown, James Dimos, Locke Reynolds Boyd & Weisell, Indianapolis, Thomas A. Whitsitt, Giddings, Whitsitt, Baker & McClure, Lebanon, for appellee/cross-appellant.

ROBERTSON, Judge.

This appeal arises from proceedings supplemental in a lawsuit awarding a $2,000,-000 judgment to the now appellee-judgment

creditor George E. Russell. The now appellant-judgment debtor C.W. Jackson appeals from trial court rulings made in the proceedings supplemental. The original trial proceedings were affirmed by the opinion of this court. *See, Jackson v. Russell* (1986), Ind.App., 498 N.E.2d 22. Rehearing and transfer were denied in that appeal.

After judgment was entered, C.W. Jackson and his wife, Marguerite L. Jackson, completed a series of transactions involving property they owned. These transactions form the bulk of the facts involved in this appeal.

The Jackson transfers began about two months after the entering of the $2,000,000 judgment. The Jacksons owned all of the stock of Como Plastics, an Indiana corporation. The building and the real estate of Como Plastics, located in Bartholomew County, Indiana, were owned by Jackson Plastics Company which is an Indiana general partnership in which C.W. Jackson and his wife are equal partners. Jackson Plastics Company was specifically created in 1980 for the purpose of owning the real estate and improvements thereon which were to be leased to Como Plastics. Jackson Plastics also owned a parcel of real estate next to the property occupied by Como Plastics, and two Beech aircraft. In November, 1984, Jackson Plastics transferred title to one of the aircraft to Columbus Air Corporation, an Arizona corporation in which the Jacksons owned all of the stock. Transfer was made by a bill of sale signed by the Jacksons as general partners of Jackson Plastics. No money changed hands as a part of this transfer, although it appears that Columbus Air assumed the debt on the airplane. Shortly thereafter, title to the second airplane was transferred to Columbus Air Corporation under very similar circumstances. At about the same time Jackson Plastics transferred the parcel of real estate next to the Como Plastics plant to Tiger Development Company, which is an Arizona partnership. The Jacksons owned half of Tiger Development with the other half being owned by Lincoln Meadows Corporation, an Indiana corporation. Lincoln Meadows stock was owned entirely by the Jacksons. Tiger paid no money for the real estate. In early 1985, Jackson Plastics, by way of a quitclaim deed, transferred the property occupied by Como Plastics to C.W. Jackson and Marguerite Jackson as "husband and wife as their community property." The deed recited that the transfer was made for $10 and other consideration. After the above transfers were completed, Lincoln Meadows merged with Excelarium Products Corporation, an Arizona corporation, with all of the stock being owned by the Jacksons. Como Plastics was also merged into Excelarium a little later. In both mergers no money was exchanged, however, both Jacksons received additional Excelarium stock. There are also a few parcels of real estate located in Indiana owned by the Jacksons as husband and wife. No transfers involving these parcels were made during this period.

It should also be noted that the Jacksons had been married for 40 years or more and since 1969 they resided in Arizona, a community property state. Mrs. Jackson was not a party to the original lawsuit.

The appeal and the cross-appeal stems primarily from a trial court order which held, among other things, that the partnership interest of C.W. Jackson in Jackson Plastics was a separate and distinct individual interest and subject to execution by Russell but Russell did not have a lien on the shares of stock of Como, Lincoln Meadows or Excelarium and those shares were not subject to execution. The trial court also found that the transfers of the two airplanes and the conveyance of the two parcels of real estate in Bartholomew County to be fraudulent.

Jackson states the issues on appeal as being:

1. Whether the trial court erred, as a matter of law, when it denied Jackson's Motion to Quash or Modify the Writ of Execution on March 17, 1986.

2. Whether the trial court's Order in Proceedings Supplementary of March 12, 1986, is supported by sufficient evidence or is erroneous as a matter of law.

3. Whether the enforcement of the Judgment against Marguerite L. Jackson violates her constitutional right to due process.

Jackson argues the first two issues jointly with the thrust of the arguments being that the proceeds of the real estate held as tenants by the entireties are not subject to the separate debts of one spouse and that the proceeds and profits from the sale of the real estate are community property and not subject to judicial execution of one of the spouses.

Initially, we deem it proper to examine the post-judgment property transfers in the context of the trial court's finding that they were fraudulently made.

IND. CODE 32–2–1–14 reads:

All conveyances or assignments, in writing or otherwise, of any estate in lands, or of goods or things in action, every charge upon land, goods or things in action, and all bonds, contracts, evidences of debt, judgments, decrees, made or suffered with the intent to hinder, delay or defraud creditors or other persons of their lawful damages, forfeitures, debts or demands, shall be void as to the person sought to be defrauded.

Case law has developed a "badges of fraud" test to identify occurrences indicative of a fraudulent intent on the part of those making the transfers. These characteristics are summarized in *Arnold v. Dirrim* (1979), Ind.App., 398 N.E.2d 442, at 446, 447:

Among the most common indicia of fraud is the transfer of property by a debtor during the pendency of a suit against him, especially where the transfer renders the debtor insolvent or greatly reduces his estate.... Evidence of a series of contemporaneous transactions the result of which is to strip a debtor of all his property available for execution is not an ordinary transaction and is therefore a badge of fraud.... Another reliable indication of fraudulent intent is the presence of secret or hurried transactions not in the usual mode of doing business. Indeed any transaction conducted in a manner differing from customary methods may be fraudulent. It is also a badge of fraud that the debtor retains benefits over the property transferred. One may not be the beneficial owner of property and still have it exempt from his debts.... Furthermore the fact that no consideration was given or that the consideration was greatly below the value of the property is recognized as a prime factor in determining whether a transaction is to be deemed fraudulent.... Finally, a transfer of property between members of a family may evince a fraudulent intent. (Citations omitted.)

The concurrence of several of the badges of fraud allows affirming the trial court. *Jackson v. Farmers State Bank* (1985), Ind.App., 481 N.E.2d 395, *trans. denied.*

■ An examination of the post-judgment Jackson transfers, as previously recounted in this opinion, shows that they comfortably fit within the *Arnold* indicia of fraud. Even though Jackson sets forth legitimate business purposes for each of the transactions, a pure motive on the part of the debtor in making a fraudulent transfer will not cleanse the transaction. *Gable v. Columbus Cigar Co.* (1895), 140 Ind. 563, 38 N.E. 474.

■ Turning to the next step, we note that every state has jurisdiction to determine for itself the liability of property within its territorial limits to seizure and sale under the process of its courts. *Clark v. Williard* (1935), 294 U.S. 211, 55 S.Ct. 356, 79 L.Ed. 865. In Indiana the applicable statute is section 28 of the Indiana Uniform Partnership Act, which reads:

(1) On due application to a competent court by any judgment creditor of a partner, the court which entered the judgment, order, or decree, or any other court, may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt with interest thereon; and may then or later appoint a receiver of his share of the profits, and of any other money due or to fall due to him in respect of the partnership, and make all other orders, directions, accounts and inquiries which

the debtor partner might have made, or which the circumstances of the case may require.

I.C. 23-4-1-28(1)

Jackson's arguments about community property notwithstanding, the overriding facts are that Jackson is a partner in an Indiana partnership whose assets are located in Indiana. I.C. 23-4-1-28 speaks directly and without equivocation to the fact situation present in this appeal. Moreover, a partner's interest in the partnership is personal property. I.C. 23-4-1-26.

Viewed from a different perspective, marital property should not be used as a device to cheat creditors. R. Leflar, *American Conflicts Law* (3rd Ed.1977) at p. 474. This position is supported by comment (h), *Restatement* (2d) Conflict of Laws § 258, which reads:

*Interest of Third Persons.* The interests of a third person, such as a creditor or transferee, in a moveable owned by one or both of the spouses will be determined by the law that would be applied by the courts of the state where the moveable was located at the time the interest is claimed to have been acquired. These courts would apply their own local law, rather than the local law of the state of the spouses' domicile, when required to do so by considerations of justice to the third person. This will be so when the third person has justifiably relied upon that state's local law ..., as he is likely to have done if he is domiciled in the state.

■ In sum, we are of the opinion that Jackson has a properly rendered judgment against him and that Indiana law makes Jackson's partnership interest in Jackson Plastics subject to execution in satisfying that judgment. It also follows that our decision does not affect the property of Marguerite L. Jackson thereby rendering Jackson's third issue relating to due process moot.

On cross-appeal Russell raises the issue of whether the trial court erred in finding that Jackson's stock in Indiana corporations was not subject to execution. The thrust of the trial court's ruling was that the stock was personal property and subject to the law of the domicile of the owner. As a result, the stock was community property prior to the transfers, not subject to execution, and therefore, it could not be fraudulently conveyed. A reading of the trial court's conclusions gives every indication that the transfers by Jackson of this stock were also fraudulent, in the sense that it jeopardized the judgment creditor, although the trial court stopped short of making a finding in that regard.

The original stock in Como Plastics was held by Jackson and his wife as joint tenants with rights of survivorship as indicated by the stock certificates and the stock transfer ledger of the corporation. The recent case of *United States v. Capital Savings Association,* (N.D.Ind.1983), 576 F.Supp. 790 held that under Indiana law a joint account may be subject to claims to the extent of the debtor-party's interest. We believe it to be the general rule that personal property held by joint tenants can be reached by a creditor. *See,* 48A C.J.S. § 32, *Joint Tenancy.*

We are of the opinion that I.C. 34-1-36-5 controls under the facts before us. That statute provides a procedure for a judgment creditor to enforce the statutory lien created by that statute. It reads:

Shares of stock in any corporation or company may be levied upon and sold in the county where the office and books, showing the shares of stock and stockholders of the corporation or company are kept; and the sheriff shall transfer the stock, subject to the rights of the corporation or company. The sheriff shall have access to the books of any corporation or company in his county; for the purpose of making the levy, and, if refused access, the court shall enforce the right. The shares of stock subject to be levied upon, shall be bound by the execution from the time of the levy, and when such levy is made, the sheriff shall leave the notice thereof with the officers of the company, and such levy shall constitute a lien upon the stock from the time of such levy.

Under the facts of this case, we are dealing with shares of stock in an Indiana corporation whose assets are located entirely in Indiana and which are owned by joint tenants. It is our belief that, by reason of our determination of the prior issue, Jackson's shares of that stock are also subject to execution by the judgment creditor pursuant to I.C. 34–1–36–5.

The parties have mentioned two other issues: the denial of a motion for change of judge which was filed by the garnishee-defendants Jackson Plastics Company, Excelarium Products Corporation, Columbus Air Corporation, Tiger Development Company and Marguerite L. Jackson and made pursuant to Ind. Rules of Procedure, Trial Rule 76, and the denial of a demand for trial by jury which was filed by C.W. Jackson pursuant to T.R. 38 and constitutional provisions. Our examination of the record does not reveal that either of these issues was included in a motion to correct error; neither do we find the issues were argued in the appellant Jackson's original brief. Clearly, in the latter instance the failure to argue an issue in the appellant's brief amounts to a waiver, A.R. 8.3(A)(7), as does the failure to include the issue in a motion to correct error. *Indiana Dept. of Mental Health v. State ex rel. Southlake Center for Mental Health, Inc.* (1984), Ind.App., 467 N.E.2d 1256. Even so, neither contention has merit. It is conceded that Jackson's jury trial demand was not timely made. Jackson's argument, which initially appears in his reply brief, that the addition of the garnishee-defendants in the form of new parties elevates form over substance when it is considered that the Jacksons are the sole owners of the purported new parties. The general rule applicable to this case is that proceedings supplemental are but a continuation of the original proceedings with the result that changes of judge or venue are not available. *See, Citizens Nat. Bank of Grant County v. Harvey* (1976), 167 Ind.App. 582, 339 N.E.2d 604.

We reverse the trial court's decision as it relates to the Como Plastics stock and remand for further proceedings consistent with this opinion. We affirm the trial court in all other regards.

RATLIFF, C.J., and CONOVER, P.J., concur.