## HOSANNA ET AL. *v.* ODISHOO.

[No. 26,508.   Filed January 8, 1935.   Rehearing denied
April 8, 1935.]

Frederick C. Crumpacker, Edwin H. Friedrick, and Jay E. Darlington, for appellants.

Charles H. Peters and Johan Waage, for appellee.

FANSLER, C. J.—Appellee was plaintiff below. His complaint is in three paragraphs.

The first paragraph alleges that he recovered a judgment in the sum of $542.25 and costs against the defendant, Baba Hosanna, on the 18th day of May, 1925, at which time appellee and Baba Hosanna each owned an equitable undivided one-half of a certain tract of land, the legal title to which was in Alma Hosanna, the wife of Baba Hosanna, as trustee; that with the purpose and intent to hinder, delay, and defraud his creditors, including appellee, Baba Hosanna, procured his wife to join with him and conveyed his undivided one-half of the property to the defendant, Samuel Tamraz, a brother of Alma Hosanna; that there was no actual consideration for the conveyance, and that at the time Tamraz knew of the existence of the indebtedness to appellee, and knew that the purpose of the conveyance was to defraud the creditors of Baba Hosanna, including appellee. The prayer is for judgment setting aside the deed and subjecting the property to the payment of appellee's judgment.

The second paragraph alleges ownership of the land, as tenants in common, by appellee and Baba Hosanna. The other appellants are made parties to answer as to their interest, if any. There is a prayer for partition and sale of the property, which it is alleged cannot be divided without injury.

In the third paragraph, which was filed after a cross-complaint by appellants, Baba Hosanna and Samuel Tamraz, it is alleged that appellee recovered a judgment against Baba Hosanna, which is the same judgment described in the first paragraph of complaint; that, upon execution on said judgment and sale by the sheriff, appellee purchased the interest of Baba Hosanna in the common property and procured a sheriff's deed thereto, and that, believing himself to be the sole owner, he went into possession of the property and made repairs and improvements thereon to the value of $800.00; that he paid taxes and interest on a mortgage aggregating $200.00 over and above the rents and profits collected. The prayer is for an accounting in respect to collections and expenditures involved in the ownership of the property.

Appellants answered in general denial and six affirmative paragraphs, one of which alleges payment of the judgment described in appellee's first paragraph of complaint, and the remainder of which we need not notice.

Baba Hosanna and Samuel Tamraz filed three paragraphs of cross-complaint. The first is for partition and sale of the property, and seeking a lien on appellee's share of the proceeds. The second paragraph seeks to enjoin appellee from attempting to enforce the judgment referred to in the first paragraph of complaint, and, so far as appellant Tamraz is concerned, puts in issue the question of whether the judgment is a lien on Tamraz's share of the land. The third paragraph seeks

an accounting in reference to certain matters involved in the ownership of the land.

The issues were closed by replies in general denial to each paragraph of answer and to the cross-complaint.

The court found specially that prior to April 9, 1928, appellee and appellant, Baba Hosanna, were each the owner of an undivided one-half interest in the real estate in question, and that the legal title was held in trust by Alma Hosanna, wife of Baba Hosanna; that on May 18, 1925, appellee recovered a judgment against appellant, Baba Hosanna, in the sum of $542.25, and costs in the sum of $33.60; that an execution issued on said judgment to the sheriff of Starke county, and that he sought to levy upon the undivided one-half interest of Baba Hosanna in the real estate in question, and to sell the same, and on July 3, 1926, the sheriff issued and delivered to appellee a sheriff's deed to said real estate, which was accepted and recorded, and that at the time of said sale the principal and interest of said judgment amounted to $546.31; that in payment of the purchase price appellee executed and delivered his receipt to the sheriff for the amount of the judgment, and paid $63.82 accrued court costs; that entries were made upon the judgment docket, fee book, and other records of the Pulaski Circuit Court indicating that said judgment and execution had been fully paid and satisfied; that appellee never received any money or other article of value in satisfaction of the judgment other than the sheriff's certificate of sale and deed referred to, which were the only basis of the entries showing satisfaction of the judgment; that at the time of the pretended sale, Baba Hosanna did not have legal title to the land, but that he and appellee were each the owner of an equitable undivided one-half interest therein. That thereafter appellee brought an action in the Starke Circuit Court

against Baba Hosanna, Alma Hosanna, one Bollinger and wife, and Joseph Baba, for specific performance as to the Bollingers, to set aside a deed from Bollingers to Alma Hosanna, and for an accounting; that appellee alleged in that complaint that he was the sole owner of the real estate in question, and that all right and title which Baba Hosanna had in the real estate had been sold under the execution referred to; that in that action Alma Hosanna filed a cross-complaint to quiet title to the real estate. That on April 9, 1928, it was adjudged and decreed that Andrew Odishoo and Baba Hosanna each owned an undivided one-half of the real estate; that Alma Hosanna held title in trust for them, and that Baba Hosanna had a lien of $150.00 upon the undivided one-half interest of appellee. The court further found that, on the 19th day of April, 1928, appellant, Samuel Tamraz, who is the brother of Alma Hosanna, knew that there was litigation pending between appellee and the Hosannas concerning the ownership of the real estate in question; that during the pendency of the litigation Tamraz loaned money to Baba Hosanna, for the purpose of assisting him in the litigation, in the sum of $800.00; that on that date, Baba Hosanna and Alma Hosanna, his wife, conveyed an undivided one-half interest in the real estate to Samuel Tamraz by quitclaim deed for a consideration of $1,300.00, made up of the $800.00 which Tamraz had advanced, $10.00 in cash, and the payment of $490.00 early in the year 1929; that on August 11, 1928, appellee brought the instant action, and Samuel Tamraz was made a party; that on December 7, 1928, the defendants filed their answer; that prior to the acceptance of the quitclaim deed, Tamraz had read a copy of the judgment rendered on April 9, 1928. That on May 18, 1928, the Pulaski Circuit Court, upon petition of appellee, entered an order quashing and holding for naught the return of the sheriff respecting the sale of

the property on execution, and declaring the judgment unpaid and unsatisfied, and ordering an execution, which was delivered to the sheriff of Starke county and returned unsatisfied; that said order was issued without notice to Baba Hosanna or to his attorney. That the judgment in favor of appellee, rendered on May 18, 1925, has never in fact been paid, and that at the time, and before, he accepted a deed to said premises, Samuel Tamraz knew, and, in the exercise of ordinary care and reasonable diligence, ought to have known, that it had not been paid; that when he paid the final $490.00 of the purchase price of the land, he had filed an answer and knew appellee claimed said judgment to be a lien upon the interest of Hosanna in the real estate. That after he received the sheriff's deed, appellee believed he was the sole owner of the property and made extended improvements thereon, but there is no evidence that they enhanced the value of the real estate. There are further findings as to collections of rent and expenditures for taxes, etc. It is found that Tamraz knew, when he accepted the deed, of the joint ownership of the property between appellee and Baba Hosanna, and that appellee had assumed charge and had possession of the real estate, and that a controversy existed between the owners arising out of their ownership, management, and control of the property.

The court stated conclusions of law upon the findings, to which appellants severally and separately excepted, and which we need not set out, since they are correctly reflected in the decree.

It was decreed that appellee and Samuel Tamraz are each the owner of an undivided one-half equitable interest in the land, and that appellant, Alma Hosanna, holds title thereto as trustee; that the plaintiff is entitled to partition; that the land is indivisible, and that

the entire legal and equitable title be sold subject to a certain mortgage lien, but free and clear of all other liens, including special assessments and taxes, except taxes for the year 1931; that the proceeds of the sale be divided equally between appellee and Samuel Tamraz after deducting the amount of the special assessments and after deducting from the share of appellee the sum of $150.00 with interest from April 9, 1928, in payment of the lien decreed by the Jasper Circuit Court in favor of Baba Hosanna, which was assigned to Tamraz; and after deducting from the share of Tamraz the amount of the judgment in favor of appellee against Baba Hosanna, rendered by the Pulaski Circuit Court on May 18, 1925, with interest and costs, and the further sum of $76.63, which was one-half of the money paid by appellee for interest, assessments, and taxes upon the land. It was further adjudged and decreed that appellee recover a personal judgment against Baba Hosanna in the sum of $20.00, which is not a lien upon the share of Tamraz in the proceeds of the property.

Appellants contend that the court's conclusion that the judgment held by appellee against Baba Hosanna, amounting to $542.25 with costs and interest, should be held out of the share of Tamraz, is entirely outside the issues. They insist that the complaint contains three separate paragraphs, each of which states a different and distinct cause of action; that the first is to set aside a fraudulent conveyance, the second is for partition, and the third for an accounting; that the only paragraph of complaint which makes any issue concerning this old judgment is the first paragraph; that the judgment is pleaded in the first paragraph to show that plaintiff is an unpaid creditor and is therefore entitled to attack the conveyance and have it set aside; that the only relief which the court could have given to plaintiff under

the first paragraph was to hold the conveyance fraudulent and set it aside. They contend further that the court found against the plaintiff on the issue of fraudulent conveyance because he made no attempt to hold the conveyance fraudulent or set it aside; that, on the contrary, it is stated repeatedly that Tamraz is the owner of the one-half interest conveyed to him, and that Tamraz paid full value for the conveyance; that the findings are entirely silent as to any fraudulent intent, which is equivalent to a finding against plaintiff, who had the burden of proving fraud.

Section 8064, Burns 1926, §33-408, Burns 1933, §8380, Baldwin's 1934, provides that conveyances made with the intent to hinder, delay, or defraud creditors shall be void as to the persons sought to be defrauded. §8068, 1926, §33-410, Burns 1933, §8384, Baldwin's 1934, provides that the question of fraudulent intent, in all cases arising under the provisions of the act, shall be deemed a question of fact. Therefore, fraudulent intent must have been found as a fact to sustain a decree setting aside the conveyance in question. The findings are silent as to fraudulent intent, which is equivalent to a finding against appellee, who had the burden upon that question. But the court did not attempt to set aside the conveyance, or grant relief, under the first paragraph of complaint.

Under the first paragraph of complaint, and under the answer of payment, and the cross-complaint, the court heard evidence concerning appellee's judgment. The facts found show that Tamraz at the time he took title to the land knew that the interest he was purchasing was held by Alma Hosanna in trust for Baba Hosanna; that he knew of the judgment against Baba Hosanna, and that it was unpaid.

Section 2-2706, Burns 1933, §421, Baldwin's 1934,

provides that all final judgments for the recovery of money shall be a lien upon real estate and chattels subject to execution. §2-3613, Burns 1933, §608, Baldwin's 1934, provides that lands held in trust are subject to execution. The judgment was, therefore, a lien upon the land in the hands of Tamraz, and the facts found were pertinent to the issue raised by his cross-complaint seeking to enjoin the enforcement of the judgment.

It is contended that, because of the entry of satisfaction of judgment after the sale of the land on execution, the lien was released, and that the entry of satisfaction of judgment was not set aside until after the purchase by Tamraz. Authorities are cited to the effect that, where a judgment creditor causes or permits the record to show that his judgment has been paid and satisfied, those acquiring title or liens while the record is in that condition, have precedence regardless of whether or not his judgment was actually satisfied. But no authority is cited holding that this rule may be invoked where the purchaser acquired his title with full knowledge of the facts. Appellee asserted title to the entire body of land, and on April 9, 1928, the Jasper Circuit Court entered a judgment against him upon that issue, and that the sheriff's sale on execution upon his judgment did not have the effect of vesting title in him. It must follow that his judgment was not satisfied. Tamraz was acquainted with the facts concerning this judgment at the time he took title. Following this judgment, and on May 18, 1928, the Pulaski Circuit Court, upon petition of appellee, entered an order quashing the return of the sheriff and the satisfaction of the execution upon appellee's judgment, and declaring it wholly unpaid and unsatisfied. It will be noted that Tamraz took title on April 19th, ten days after it was adjudged that appellee had not acquired title through the sale on execution, and with full knowl-

edge that the judgment had not been paid. He paid but $10.00 at the time of the conveyance. He was allowed a credit of $800.00 on the purchase price because of a pre-existing indebtedness of his brother-in-law to him, and the balance of $490.00 was not paid until early in the year 1929, after he had filed answers to appellee's complaint, which asserted the judgment to be a valid lien upon the interest of Baba Hosanna in the real estate, and when the entries showing payment had been set aside.

It is urged that Baba Hosanna had no notice of the petition for the order to set aside the record entry of satisfaction of appellee's judgment. This is immaterial. It is immaterial whether it had been set aside. One who purchases real estate takes it subject to all valid liens of which he has notice. Tamraz was not an innocent purchaser. With full knowledge of the facts, and with ample means of protecting himself, he chose to take title to the property and make such payments as were made. We must conclude that appellee's judgment was a lien on the property in the hands of Tamraz, and, this being true, there were no facts found which would justify the court in decreeing a sale of the land free of the lien without making provision for its payment out of the share of the proceeds belonging to Tamraz.

But Tamraz contends that appellee alleged no facts which entitle him to a foreclosure of his lien. This is true, but there was no judgment foreclosing his lien. Neither was there a complaint on file praying foreclosure of the assessment liens, which the court by its decree ordered paid from the proceeds of the sale. But appellee was not required to assert his lien.

"The title which a plaintiff is ordinarily required to set forth in the complaint in partition is such as

will enable him to secure the decree of partition demanded in his complaint. It is not incumbent upon him to make an issue settling all questions of title, or all rights of lien holders, although it is proper for him to do so." *Elston* v. *Piggott* (1884), 94 Ind. 14, 24.

It was found and decreed that appellee and Tamraz are each the owner of an undivided one-half interest in the land, and that Alma Hosanna holds legal title thereto in trust for them, and that plaintiff was entitled to partition; that the land was not susceptible of division, and it was ordered sold. Of this appellants make no complaint, since Tamraz in his cross-complaint so stated the facts to be, and prayed the identical relief thus granted.

In entering its decree for partition and sale of the property, the court found it encumbered with certain liens. Without affecting the rights of any party in interest the property might be sold, and the liens paid from the fund arising from the sale, or subject to liens, in which case the purchase price would be less by the amount which the purchaser would be required to pay in discharging the liens. But, since some of the liens affect only the share of appellant and some only the share of Tamraz, in a sale subject to liens it would have been necessary for the court to take the amount of the liens into consideration in determining the method of dividing the proceeds. The simpler method of selling the lands discharged of the liens and paying them from the proceeds was adopted by the court.

If the decree is erroneous because it orders that appellee's judgment be paid out of Tamraz's share of the proceeds, it must also be erroneous in ordering the land sold free of the lien, since there are no facts found which would justify striking down the lien. On the contrary, facts are found which would justify the foreclosure of the lien under a proper pleading. If a proper

decree must avoid requiring payment of the lien out of Tamraz's share, it must also avoid ordering the sale free of the lien, and the lien would continue and be enforceable against the entire one-half interest of Tamraz in the hands of the purchaser at the partition sale unless the lien attaches to the fund.

It is said in *Milligan* v. *Poole* (1871), 35 Ind. 64, 70:

> "We think that where land in which there is both a legal and an equitable ownership, or on which there is a lien is sold, in a proceeding for partition, the rights of the parties interested are the same, in the proceeds, that they were in the land. *Caldwell* v. *The Bank of Salem*, 20 Ind. 294."

Any decree that might have been entered could not have the effect of depriving appellee of his lien. Appellant Tamraz suffers no hardship by having the land sold discharged of the lien, and the lien paid out of his share.

"Equity regards the substance and not the form." "Equity delights to do justice, and not by halves." The latter maxim means that equity will by its decree fully adjust all rights between the parties and protect them against future litigation.

Appellant Tamraz contends that the court erred in charging his share of the real estate with the item of $76.63, which was one-half of the amount which appellee was found to have paid for taxes, assessments, etc., upon the lands. By his cross-complaint Tamraz sought an accounting respecting expenditures involved in the ownership of the property. A determination of the accounting properly involved expenditures by both parties. It was decreed that Tamraz have a lien upon appellee's share of the proceeds for $150.00, which was one-half of the balance of the purchase price of the land paid by him. In the accounting the court might well, if not more properly, have treated the item of $76.63 as a set-off or credit against the

$150.00 item, which would have resulted in nothing being charged against the share of Tamraz by reason of this item, and in charging the share of appellee with the difference between $150.00 and $76.63 in favor of Tamraz.

A correct result seems to have been reached upon the facts found. We find no error prejudicial to the rights of appellants.

Judgment affirmed.

## On Petition for Rehearing.

FANSLER, C. J.—Upon petition for rehearing, appellant Tamraz earnestly contends that the decree of the court is in effect a foreclosure of appellee's lien, and that the question of his lien is not in issue. It may clarify our views as expressed in the opinion to point out again that the question of whether or not appellee's judgment was a lien upon the share of the property claimed by Tamraz was put in issue by the cross-complaint filed by Tamraz. The purpose of this cross-complaint was to strike down the lien asserted by Odishoo because of the judgment. There was judgment against Tamraz upon this issue, and Tamraz now complains because this judgment against him, which was in effect a judgment in favor of appellee, that he did have a lien for the amount of his judgment, was not nullified by a further decree selling the land upon which the judgment was a lien, discharged of the lien, and without causing the lien to attach to the fund.

Having, at the suggestion of appellant Tamraz, determined that appellee's judgment was a lien, to have deprived him of every substantial benefit thereof in the same decree would be contrary to the very concept of good conscience and justice upon which equity is founded.

Petition for rehearing denied.