PHYLLIS JANE EYLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Eyler v. Commissioner
Docket No. 8482-79.
United States Tax Court
T.C. Memo 1983-397; 1983 Tax Ct. Memo LEXIS 393; 46 T.C.M. (CCH) 690; T.C.M. (RIA) 83397; July 11, 1983. George W. Ericksen, for the petitioner. Ben G. Reeves, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined that petitioner, as transferee of property from George L. Eyler, is liable for $53,300 of a $255,558.59 deficiency in her transferor's Federal income tax for the year 1972. *394 The issue for decision is whether petitioner is a transferee within the meaning of section 6901. [1]
FINDINGS OF FACT Some of the facts have been stipulated and those facts are so found. The stipulations and exhibits are incorporated by this reference. Petitioner Phyllis Eyler is an individual who resided in Dunedin, Florida when the petition was filed in this case. She moved there from her previous residence in Indianapolis, Indiana in 1978. Petitioner's liability in this case is predicated upon respondent's determination that she is the transferee of George L. Eyler to the extent of $53,300. A deficiency in Federal income tax for 1972 was assessed against George L. Eyler and his former wife June H. Eyler, now deceased, on April 13, 1978 pursuant to a decision by this Court. The validity of that assessment is not contested in this proceeding. A timely notice of transferee liability was sent to petitioner. Petitioner met George Eyler in March, 1977. At that time George was involved in state court litigation over a business *395 he had founded with some friends, and in litigation over his 1972 taxes. Petitioner knew of these suits when she and George were married in June, 1977. George's only assets at the time of the marriage were two houses in Indianapolis. One, located at 8765 Pine Ridge Drive (the "residence"), was George Eyler's home; the other, at 8756 Pine Ridge Drive (the "rental property"), was a rental property. George Eyler had purchased both properties in 1972. A mortgage with an initial balance of $31,000 was outstanding on the rental home in 1977; George Eyler owned the residence free and clear. Shortly after the marriage, George Eyler transferred title to his home at 8765 Pine Ridge Drive to his attorney, who immediately reconveyed it to petitioner and George as tenants by the entireties. No consideration was given for the transfers. A few days later, on July 28, 1977, George transferred the rental property to Phyllis. She assumed the outstanding mortgage, but gave no other consideration for the transfer. The fair market value of the house and lot at this time was $49,500. In October of 1977, George quitclaimed his interest in the residence to Phyllis, making her the sole owner *396 of their home. The fair market value of the property was $117,300. She gave no consideration for the transfer. In December petitioner sold the rental home to Gary and Pamela Neumann. After payment of the mortgage ($29,506.29) and other closing costs, Phyllis realized $18,269.04 from the sale. Petitioner Phyllis Eyler supported herself and her husband after their marriage in June, 1977. She also used her money to keep up the rental property since George was penniless and heavily in debt. George was partially motivated to transfer the rental home to petitioner because she was making these payments. Petitioner and her husband decided to sell that property in October because they needed the money to live on. The proceeds were used to pay household expenses and some of George's debts. George Eyler reported the gain from the sale of the property on his separate 1977 tax return even though title had been transferred to Phyllis prior to the sale. In April of 1978 George Eyler reached an agreement with respondent concerning his 1972 income tax liabilities, and the case pending before this Court over these matters was settled. A decision was entered and a timely assessment *397 made. [2] The deficiency assessed was quite large, but George believed that much of it would be offset by other adjustments to his tax. [3] Both George's accountant and Phyllis' attorney also believed that his ultimate liability could be far less than the assessment. In December, 1977 the state court litigation finally came to trial; in May, 1978 judgment of over one hundred thousand dollars, plus twenty-five thousand dollars in attorney's fees, was entered against George Eyler. On June 30, 1978, the prevailing party in that suit filed a complaint against George seeking to collect on the judgment; on July 11 the complaint was amended to include petitioner as a defendant, and to add a claim that the conveyance of the rental home to her be declared void. The *398 amended complaint alleged that the property was transferred to her under circumstances rendering it fraudulent, and therefore voidable, under Indiana law. The Eylers settled this suit, agreeing to sell their home and apply $82,500 of the proceeds to settlement of the litigation. On July 21, 1978 Phyllis and George transferred their interests in the property to a purchaser named Herbert Simon, then paid the settlement and other closing costs. The balance of $41,450 was payable to petitioner. Petitioner had already moved to Florida by the time of this closing on July 21, 1978, but her husband was present to receive the proceeds of the sale. [4] Some of this money was used to make payments on his debts. George Eyler's former wife June was also liable for the deficiencies in tax. She died on July 30, 1972, and her will was admitted to probate in September, 1972. George Eyler was the sole legatee and devisee under *399 the will. He received one piece of real estate owned by June in September, 1976, [5] and in February, 1980 received approximately $490, the balance of the property remaining for distribution. The Government never filed a claim with the estate for the deficiencies at issue here. The notice of transferee liability set petitioner's liability at $102,500. This was subsequently recomputed to show a maximum liability of $53,300. [6]
OPINION Petitioner Phyllis Jane Eyler is the wife of George L. Eyler who owes substantial amounts of Federal *400 income tax. George was involved in litigation over these tax deficiencies and over a failed business venture when he and Phyllis were married in June, 1977. Phyllis supported the couple after the marriage, paying both for their daily living expenses and for the upkeep of George's two houses since George had no money himself. Shortly after their marriage, George transferred title to the home to Phyllis. Later he also transferred the rental property to her; she assumed the outstanding mortgage, but otherwise gave no consideration. Eventually the rental property was sold. In 1978 a judgment of over $100,000 was entered against petitioner's husband George Eyler in a suit over a business venture. George and Phyllis sold their residence, using the proceeds to settle a suit brought to enforce that judgment. As owner of the property Phyllis realized some $41,000 on the sale. In 1978 George also settled the dispute concerning his 1972 tax liabilities. That deficiency remains unpaid. The issue for our decision is whether Phyllis is liable under section 6901 for a portion of that 1972 deficiency. The respondent maintains that she is substantively liable as a transferee under Indiana *401 law, that the other requirements of section 6901 have been met, and that she is therefore liable for a portion of the taxes owed by her transferor George Eyler. Petitioner, however, claims that the respondent has not met his burden of proof under section 6901, that equitable title never passed to her, and that she in fact reimbursed or returned any funds she did receive from her husband George and is therefore absolved of liability as a transferee. We agree with respondent. Section 6901 gives the Commissioner authority to collect deficiencies from persons other than the delinquent taxpayer. It provides that liabilities may be collected from a transferee of property "in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred." Section 6901(a). The Commissioner bears the burden of proving that the petitioner is a transferee within the meaning of section 6901. Section 6902(a). Section 6901 is essentially a procedural provision, since the substantive liability of the transferee is dependent upon state law. Commissioner v. Stern,357 U.S. 39 (1958); United States v. Bess,357 U.S. 51 (1958). *402 The effect of this rule is to place the Government on an equal footing with all other creditors attempting to collect from a delinquent debtor. Because the transfers at issue in this case occurred in Indiana, we look to the law of that state to determine petitioner's substantive liability. Section 32-2-1-14, Ind. Code. Ann. (Burns 1982), [7] provides that all conveyances made with the intent to defraud creditors shall be void as to those creditors. Section 32-2-1-18, Ind. Code Ann. (Burns 1982), [8] states that the question of fraudulent intent is an issue of fact, and that a conveyance shall not be deemed fraudulent merely because it was made for less than adequate consideration. The cases decided under these statutes emphasize that the transfer "must be shown to have been made with intent to hinder, delay, or defraud creditors." Kourlias v. Hawkins,153 Ind. App. 411, 287 N.E. 2d 764, 766 (Ind. App. 1972); Hosanna v. Odishoo,208 Ind. 132, 193 N.E. 599, 601 (1935), rehearing denied 208 Ind. 144, 195 N.E. 72 (1935). *403 We find that petitioner is liable as a transferee under section 32-2-1-14, Ind. Code Ann. (Burns 1982). While respondent has failed to adduce direct evidence of intent, he has alleged sufficient facts constituting badges of fraud to justify an inference of fraudulent intent. As the court in Arnold v. Dirrim,398 N.E. 2d 442 (Ind. App. 1979), stated: [T]here are certain circumstances which so frequently attend transfers to defraud creditors that they are recognized as indicia or badges of fraud. These badges form important links in the chain of evidence that fixes the character of the challenged transactions. Consequently, where there is a concurrence of several such badges of fraud, an inference of fraudulent intent may be warranted. Kane v. Drake, (1866), 27 Ind. 29. [Arnold v. Dirrim,supra at 446.] [9]
Among factors considered by the Indiana courts are: a transfer of property during the *404 pendency of a suit against the transferor, especially where the transfer greatly reduces the value of the estate; a series of contemporaneous transactions which strip the debtor of all his property; a transfer for no consideration or greatly undervalued consideration; a transfer of property among family members; and a retention of control over the property by the transferor. Arnold v. Dirrim,supra at 446-447. See also Nader v. Commissioner,323 F.2d 139 (7th Cir. 1963), affg. a Memorandum Opinion of this Court. Applying these factors to the case at bar, we conclude that George Eyler intended to defraud his creditors when he transferred the properties at 8756 and 8765 Pine Ridge Drive to his wife Phyllis, since each of these badges accompanied the transfers. Two different suits were pending in 1978 when the transfers were made; George's assets were totally depleted by the "sales"; Phyllis paid nothing for the residence, and the mortgage she assumed on the rental property represented at most two-thirds of its value; and because the transfers were within the family, George continued to control and use the properties even after title was conveyed.
*405 George's testimony that he transferred the homes to Phyllis in order to protect the investment she was making in them supports this inference. While his intentions may have been entirely honorable, his desire to protect her indicates that he was aware that his creditors could levy on the property. He must have realized that by placing title to the homes in her name he was attempting to place them beyond the reach of his creditors. Thus he was, in essence, attempting to hinder his creditors as prohibited by section 32-2-1-14, Ind. Code Ann. (Burns 1982). The only evidence tending to negate the inference of fraudulent intent was George's testimony that he believed he might prevail in his business litigation and that his bad debt deduction would offset any tax deficiency. In those circumstances, the transfers to Phyllis could rationally be seen as a means of protecting her investment in the property rather than as a way of placing the assets beyond the reach of creditors. We find, however, that in light of all the other facts, this evidence is insufficient to negate the inference that Goerge Eyler made these transfers with intent to avoid his creditors. Along with a showing *406 that petitioner Phyllis Eyler is liable under Indiana law, the respondent must show that (1) the transferor was liable for unpaid Federal income taxes; (2) that all reasonable efforts were made to collect the deficiency from the transferor; (3) that the transfer for less than adequate consideration occurred during or after the period for which the liability accrued; and (4) that the transferor was insolvent prior to, or was rendered insolvent by, the transfer. Sharp v. Commissioner,35 T.C. 1168, 1175 (1961). The respondent has met his burden. Phyllis Eyler does not contest George's liability for the deficiencies referred to here. She does, however, challenge respondent's contention that he has made all reasonable efforts to collect the taxes from George, since no attepts were made at all. However, when a final assessment was issued in 1978 George Eyler had no assets whatsoever: both pieces of property that he had owned in 1977 had been transferred to the petitioner. Proceeding against an insolvent debtor would be pointless, and because "[t]he law does not require doing a vain and useless thing," the Commissioner was justified in proceeding directly against *407 the transferee. Coffee Pot Holding Corp. v. Commissioner,113 F.2d 415, 417 (5th Cir. 1940).
Petitioner also argues that there never was an effective transfer, both because George retained control over the properties, and because the transfer was a mere formality to secure the "loans" running from petitioner to her husband. We note, first, that the transfers effectively conveyed legal title to petitioner. Second, section 6901 does not require the Commissioner to pursue all possible equitable remedies against the transferor. Wilcox v. Commissioner,16 T.C. 572, 577 (1951), affd. sub nom. Bosworth v. Commissioner,194 F.2d 102 (2d Cir. 1952); 9 Mertens, Law of Federal Income Taxation, par. 53.26 (1977 ed. and 1982 Supp.). Thus he had no duty to take further action against George once legal title was conveyed to Phyllis. Finally, petitioner produced no evidence of the alleged loans she made to her husband. Absent some evidence of a formal debt, we cannot accept petitioner's claim that this case involves loans and security devices anymore than do other transfers between spouses. Petitioner also asserts that she returned some *408 of the assets to her husband when proceeds from the sales were applied to payment of his debts. Even if we accept this as true for purposes of argument, the petitioner nonetheless remains liable under section 6901 unless she shows that those debts had priority over the Government's claim. [10]Sharp v. Commissioner,supra at 1178; Gobins v. Commissioner,18 T.C. 1159 (1952), affd. per curiam 217 F.2d 952 (9th Cir. 1954). The petitioner has made no such showing here. Despite petitioner's varied arguments to the contrary, we hold that respondent has made out a prima facie case of transferee liability. Petitioner Eyler received assets from her husband under circumstances that make her liable to his creditors for the value of assets received under Indiana law. She received the properties after her husband's tax liability had accrued, and she paid less than fair consideration for them. These transfers left her husband with insufficient assets to pay his tax deficiencies. The respondent *409 took this action against petitioner knowing that what assets her husband had had were now in her possession, and that proceeding against him would be futile. The respondent has thus met his burden of proof, and petitioner is liable for the deficiency assessed against her. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the years in question, unless otherwise noted.↩
2. The assessment made by the Internal Revenue Service against George Eyler was as follows: ↩
Tax
$255,558.59
Interest
68,696.46
Credit
51,482.75
3. Mr. Eyler testified that $180,000 of the $300,000 note which he had received upon the sale of his business was not paid because the obligor had gone into receivership. He believed that this bad debt deduction could be used to offset the 1972 deficiency.↩
4. At trial George Eyler testified that he received "between thirty-one and thirty-four or thirty-five thousand" upon the sale. The stipulation states that $41,450 was realized. The stipulation controls. Rule 91(e), Tax Court Rules of Practice and Procedure.↩
5. The record does not reveal what George did with this piece of property.↩
6. Respondent arrived at the figure of $53,300 by the following computations: Property Transferred
FMV, residence
$117,300
FMV, rental property
49,500
$166,800
Less: Debts Satisfied
Judgment satisfaction
$ 82,500
Mortgage
31,000
$113,500
113,500
$ 53,300
This reflects a determination that the judgment creditor and the mortgagee had priority over the Government, that petitioner's payment of those debts reduced the value of the property she received, and that her liability under sec. 6901 is reduced accordingly.↩
7. Sec. 32-2-1-14 (formerly sec. 33-408), Ind. Code Ann. (Burns 1982), reads as follows: Conveyances and acts to defraud creditors.↩--All conveyances or assignments, in writing or otherwise, of any estate in lands, or of goods or things in action, every charge upon lands, goods or things in action, and all bonds, contracts, evidences of debt, judgments, decrees, made or suffered with the intent to hinder, delay or defraud creditors or other persons of their lawful damages, forfeitures, debts or demands, shall be void as to the persons sought to be defrauded. 8. Sec. 32-2-1-18 (formerly sec. 33-412), Ind. Code Ann. (Burns 1982), reads as follows: Fraudulent intent, a question of fact.↩--The question of fraudulent intent, in all cases arising under the provisions of this chapter [32-2-1-1 - 32-2-1-18], shall be deemed a question of fact; nor shall any conveyance or charge be adjudged fraudulent as against creditors or purchasers solely on the ground that it was not founded on a valuable consideration.
9. This decision was discussed in Townsend, "Secured Transactions and Creditors Rights," 14 Ind. L. Rev. 489, 516↩ (1981). The author found it consistent with the statutory scheme, and with decisions thereunder.
10. This rule of priority underlies the adjustments made by the respondent after the initial notice of deficiency was filed. See fn. 6, supra.↩