**Phyllis Jane EYLER,
Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 84–3133.**

United States Court of Appeals,
Eleventh Circuit.

May 20, 1985.

---

George W. Ericksen, Tampa, Fla., for petitioner-appellant.

Glenn L. Archer, Jr., Michael L. Paup, Chief, Wynette J. Hewett, Patricia A. Willing, U.S. Dept. of Justice, Appellate Section, Tax Div., Washington, D.C., for respondent-appellee.

Before HILL, KRAVITCH and SMITH,* Circuit Judges.

EDWARD S. SMITH, Circuit Judge:

In this tax case, the United States Tax Court found that Phyllis Eyler (Phyllis) was a transferee of property in fraud of creditors from George Eyler (George), and held that Phyllis was liable for $53,300 of a $255,558.59 deficiency in George's federal income tax for 1972. We affirm in part, reverse in part, and remand.

---

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

*Issues*

We review two issues on appeal from the Tax Court. The first question is whether the Tax Court ruled properly that George and Phyllis Eyler conducted a fraudulent transfer under Indiana law so that Phyllis Eyler became a transferee liable under 26 U.S.C. § 6901.[1] The second question is whether the Tax Court erred in ruling that application of the proceeds of sale of the transferred assets to payment of George's debts could not operate as a retransfer to relieve Phyllis of liability as a transferee under section 6901, for the reason that she had not shown those debts to have had priority over the Government's claim.

*Background* [2]

On October 21, 1976, the Commissioner issued a statutory notice of deficiency to George and his deceased wife June [3] for federal income taxes of $255,558.59 incurred in 1972. George believed that the proposed deficiency would be greatly reduced by a bad debt deduction and by other adjustments. Phyllis met George in March 1977 and they were married in June 1977. When they married, Phyllis knew of the proposed tax deficiency and of George's possible liability arising from other litigation instituted in 1974 involving a business he and others had founded. George's assets included two houses in Indianapolis: one his residence, unencumbered, having a fair market value of $117,300; the other a rental property worth $49,500 on which there was a mortgage with an original balance of $31,000. After their marriage in June 1977, Phyllis paid expenses for herself and her husband, including upkeep of the rental property.

Shortly after the marriage, George's residence and the rental property were transferred without consideration to Phyllis in a series of conveyances completed in 1977. Phyllis assumed the mortgage on the rental property. George testified that he transferred the properties to Phyllis to ensure that her expenses would be reimbursed and "for her security."

In December 1977, Phyllis sold the rental property, and, after paying the mortgage and closing costs, realized $18,269.04. Phyllis used this money to pay household expenses and some of George's debts.[4]

George had contested the proposed deficiency for 1972 in the Tax Court, but settled with the Commissioner on February 23, 1978. By stipulation, a decision was entered in that case [5] and timely assessment made for a deficiency of tax and interest aggregating $324,255.05, against which a credit of $51,482.75 was allowed. The Commissioner at no time made attempt to collect the deficiency from George or from June's estate.

In May 1978, the state court entered judgment against George for over $125,000. The prevailing parties in that action moved against George and Phyllis in July 1978 to collect the earlier judgment by alleging that the transfers of the residence and of the rental property to Phyllis were fraudulent and voidable under Indiana law. As part of the settlement of the state liti-

---

1. Section 6901 provides, in part, as follows:

"§ 6901. Transferred assets

"(a) Method of collection

"The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

"(1) Income, estate, and gift taxes

"(A) Transferees

"The liability, at law or in equity, of a transferee of property—

"(i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes)[.]"

2. We recite only the facts of record material to this appeal. The Memorandum Findings of Fact and Opinion filed in the United States Tax Court is unofficially reported at 46 T.C.M. (CCH) 690 (1983) and at 52 T.C.M. (P–H) ¶ 83,397 (1983).

3. June Eyler died on June 30, 1972. George was her sole legatee and devisee.

4. George reported the gain from the sale of the rental property on his separate 1977 tax return, but Phyllis did not.

5. *Eyler v. Commissioner,* No. 470–77 (T.C. Feb. 23, 1978).

gation on July 21, 1978, Phyllis sold the residence, giving deed of that date, and paid $82,500 of the proceeds in satisfaction of the prior judgment. George received the rest of the proceeds, $41,450, and used some of these proceeds to pay some of his debts.

The Commissioner issued a timely notice of transferee liability, dated April 11, 1979, which Phyllis contested in the United States Tax Court by petition filed June 21, 1979. The Tax Court on July 11, 1983, held for the Commissioner in the transferee case,[6] and the instant appeal by Phyllis followed.

## Opinion

### A. *Fraudulent Intent*

Appellant contends that she is not a transferee under Indiana law because it has not been proved that the transfers were made with intent specifically to defeat the Government. Her argument is an ingenious one, but will not withstand analysis.

The United States Supreme Court has ruled that state law defines transferee liability under the collection procedures of the Internal Revenue Code.[7] With respect to fraudulent intent as an element of a fraudulent conveyance, the Indiana statutes provide:[8]

The question of fraudulent intent, in all cases arising under the provisions of this chapter, shall be deemed a question of fact; nor shall any conveyance or charge be adjudged fraudulent as against creditors or purchasers solely on the ground that it was not founded on a valuable consideration. [1 R.S. 1852, ch. 42, § 21, p. 299; Acts 1982, P.L. 187, § 29.]

Because the Indiana statute defines the issue of intent as one of fact, we cannot reverse the trial court's findings unless they are clearly erroneous on a review of the record as a whole.[9]

■ The Indiana case law notes that fraudulent intent is rarely established by direct evidence, but that certain circumstantial badges of fraud will prove intent.[10] These badges of fraud include: (1) the transfer of property by a debtor during the pendency of a suit against him, especially if the transfer renders the debtor insolvent or greatly reduces his estate;[11] (2) a transfer of property by the debtor that strips him of all property subject to execution;[12] (3) retention by the debtor of a beneficial interest in the property;[13] (4) transfer of property for no or inadequate consideration;[14] and (5) a transfer of property between members of a family.[15]

■ The facts of this case as stipulated and found by the Tax Court illustrate each of these badges of fraud. (1) George Eyler conveyed property to a family member (his wife, Phyllis). (2) She gave inadequate

6. The Commissioner and Phyllis stipulated that the maximum amount of the deficiency that Phyllis could be liable for was $53,300. This figure was calculated as follows:

| | |
|---|---|
| Fair market value of property transferred to Phyllis: | $166,800 |
| Less: Claims Phyllis paid that had priority over the deficiency: | (113,500) |
| Equals: The stipulated amount | $ 53,300 |

7. *Commissioner v. Stern*, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958); *United States v. Bess*, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958).

8. IND.CODE ANN. § 32–2–1–18 (Burns 1982).

9. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Nader v. Commissioner*, 323 F.2d 139 (7th Cir.1963).

10. *Arnold v. Dirrim*, 398 N.E.2d 442 (Ind.Ct.App. 1979).

11. *Id.* at 446–47.

12. *Id.* at 447; *Hoffman v. Henderson*, 145 Ind. 613, 44 N.E. 629 (1896).

13. *Arnold,* 398 N.E.2d at 447.

14. *Id.;* note, however, that the Indiana statutes provide that lack of consideration alone will not suffice to show fraudulent intent. IND.CODE ANN. § 32–2–1–18 (Burns 1982).

15. *Arnold,* 398 N.E.2d at 447. *See generally Milburn v. Phillips*, 136 Ind. 680, 34 N.E. 983 (1894).

consideration for the property. (3) George retained a beneficial interest in the property, because he maintained a right to determine how to dispose of the proceeds of the property. (4) The transfer from George to Phyllis stripped George of assets subject to execution. (5) Finally, the transfer greatly reduced George's assets, if it did not render him insolvent. Given these facts, which are circumstantial evidence of fraud, we can find no clear error in the Tax Court's finding that the intent behind the conveyances was fraudulent.

Phyllis Eyler contends that Indiana law is unusual in that it requires a finding of specific intent to defraud particular creditors in order for those creditors to void the contested transactions. She maintains there was no such fraudulent intent with respect to the Government in this case. The case law, however, does not support this interpretation of the Indiana statute.[16] The cases show, as we have discussed, that fraud is a matter of fact, and that if no facts to prove fraud are submitted, fraud may not be found.[17] No case rules that a debtor must specifically contemplate which creditors he plans to defraud by transferring assets. The cases do hold that a party who is not a creditor may not set aside a transfer of property because it is fraudulent as to a third party who is a creditor.[18] In *Personette*, the

Indiana Supreme Court held that any creditor injured by a fraudulent conveyance could set that transaction aside.[19] There is no doubt in this case that the conveyance of property from George to Phyllis injured the United States. We read the words "persons sought to be defrauded" in the Indiana statute to be the equivalent of "persons intended to be defrauded," and hold that the same badges of fraud enumerated above, that establish intent to defraud creditors, also establish intent to defraud "other persons." Thus, even though the Government's standing as a choate creditor may not have been fixed at the time of the transfers, the potential liability was known to the Eylers, and, if the property had not been transferred, it would have been available to satisfy George's tax deficiency, subject to creditors' claims holding priority over the Government claim. Intent to defraud specifically the Government was not proved, but such proof is not needed for the Government to set aside the conveyances and to hold Phyllis liable for George's tax deficiency.[20] It has been said that common sense and the tax law are rarely even waving acquaintances.[21] But the contention here is a Tweedledee-Tweedledum argument. The Government's power to collect taxes may not be frustrated or enforced by reading the law as if it were the gospel according to Lewis Carroll. Ap-

---

16. The statute in question reads:
 " * * * Conveyances and acts to defraud creditors.—All conveyances or assignments, in writing or otherwise, of any estate in lands, or of goods or things in action, every charge upon lands, goods or things in action, and all bonds, contracts, evidences of debt, judgments, decrees, made or suffered with the intent to hinder, delay or defraud creditors or other persons of their lawful damages, forfeitures, debts or demands, shall be *void as to the persons sought to be defrauded.* [1 R.S. 1852, ch. 42, § 17, p. 299.]" IND.CODE ANN. § 32–2–1–14 (Burns 1982). (Emphasis supplied.) The underscored language is the basis of appellant's "targeted persons" argument.

17. *Kourlias v. Hawkins,* 153 Ind.App. 411, 287 N.E.2d 764 (1972); *Hosanna v. Odishoo,* 208 Ind. 132, 193 N.E. 599 (1935). In *Kourlias,* the transfer was made to stabilize a marriage, and no intent to defraud was found. In *Hosanna,* no evidence supported a finding of fraud.

18. *Barrows v. Barrows,* 108 Ind. 345, 9 N.E. 371 (1886); *Leasure v. Leasure,* 86 Ind.App. 499, 157 N.E. 11 (1927).

 The *Barrows* case holds that a subsequent creditor must prove the transferor's intent to defraud him, as well as existing creditors, in order to set aside a transfer of property. In the case at bar, the Government is not a subsequent creditor because the Eylers had notice of the tax claim when they made the conveyances.

19. *Personette v. Cronkhite,* 140 Ind. 586, 40 N.E. 59 (1895).

20. Phyllis' liability to the Government was reduced by her payment of claims that had priority over the tax deficiency claim. See *supra* note 6.

21. *Skoglund v. United States,* 230 Ct.Cl. 833, 834 (1982).

**1134**

pellant's claim that the Tax Court misinterpreted the Indiana statute must fail.

## B. Retransfer of Property

Appellant also contends that at the time the real estate in question was sold, and in any event well prior to the notice of transferee liability, the assets conveyed to her were no longer the subject of transferee liability, because she had retransferred to George. The record indicates that there may have been effective retransfers.

 A transferee may avoid liability for a tax deficiency under a fraudulent transfer statute by reconveying the property to the transferor under certain conditions.[22]

This [Tax] Court has frequently recognized that:

> "If a transferee reconveys the property to the transferor *prior to the respondent's taking action to collect from the transferee,* the transferee relieves himself of any liability, since the retransfer purges the fraud from the original transfer, the return of the property serving to leave the creditor in the same position he was in prior to the original transfer. * * * [*Robert Ginsberg,* 35 T.C. 1148, 1155–1156 (1961), affd, 305 F.2d 664 (C.A.2, 1962).]" [Emphasis supplied.]

In *Mendelson,* the Tax Court was careful to note that,[23]

> [w]e have frequently held that when a transferee receives property without consideration from an insolvent transferor and uses such funds to pay debts of such transferor, such payment does not absolve the transferee of liability for the transferor's taxes except to the extent that the debts so paid have priority over the Government's tax claim. * * *

As appellant's counsel points out, retransfer and priority issues are not identical. A transferee in fraud of creditors may reconvey or retransfer the property to the trans-

feror and avoid liability as a fraudulent transferee. A transferee who pays the debts of his transferor, however, will not be relieved of liability to the extent of payment unless the debts paid held priority over the tax claimed by the Government.

The Government acted to collect from Phyllis when it issued the notice to her of transferee liability on April 11, 1979. This notice issued well after she had disposed of each piece of property, and we must review the Tax Court's findings on whether these transactions involved retransfers of the property to George. These findings are matters of fact, and we will not reverse them unless they are clearly erroneous on review of the record as a whole. The application of the law, however, we review independently.

The Tax Court *assumed* for purposes of argument that both dispositions were actual retransfers but ruled that in such event the proceeds must have been applied to George's debts holding priority over the tax deficiency in order for Phyllis to escape liability. This is an incorrect rule of law, and we reverse.

 The *Mendelson* case states the correct rule, and we remand for the Tax Court to determine whether the circumstances of the dispositions of the rental property and of the residence in fact effected retransfers to George Eyler. If Phyllis actually retransferred the proceeds of the transactions to George, in whole or in part, prior to April 11, 1979, then to the extent of such retransfers she was absolved from liability. This is a matter of fact, and the Tax Court must make findings on the issue. In the event the Tax Court finds that these transactions did not constitute retransfers to George, Phyllis will be liable as a transferee, except for those amounts she paid on debts of George's that held priority over the tax deficiency.

---

**22.** *Mendelson v. Commissioner,* 52 T.C. 727, 735 (1969) (quoting *Ginsberg v. Commissioner,* 35 T.C. 1148, 1155–56 (1961), *aff'd,* 305 F.2d 664 (2d Cir.1962)).

**23.** *Mendelson,* 52 T.C. at 740.

*Conclusion*

The Tax Court decided properly that Phyllis Eyler was a transferee from George Eyler under the Indiana statute of fraudulent conveyances. We affirm that portion of the Tax Court decision. The Tax Court, however, applied an incorrect rule of law in holding that Phyllis Eyler's alleged retransfer of the subject property to George Eyler did not vitiate her liability because the allegedly retransferred property was not used to satisfy claims having priority over the tax deficiency. We REVERSE and REMAND for further proceedings on this issue in the Tax Court.

AFFIRMED in part, REVERSED in part, and REMANDED.